# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| SKYBUS AIRLINES, INC., | Case No. 08-10637 (CSS) |
| Debtor. | |

## PLAN OF LIQUIDATION

Adam G. Landis
Matthew B. McGuire
LANDIS RATH & COBB LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

Ronald E. Barab
Brian P. Hall
Jessica A. Rissmiller
SMITH, GAMBRELL & RUSSELL, LLP
Suite 3100, Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 815-3500
Facsimile: (404) 815-3509

Counsel to Skybus Airlines, Inc.,
Debtor and Debtor in Possession

January 30, 2009

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x
In re                                          :
                                               :   Chapter 11
SKYBUS AIRLINES, INC.,                          :   Case No. 08-10637 (CSS)
                                               :
                                               :   Judge Sontchi
              Debtor.                          :
-------------------------------------------------------x

### PLAN OF LIQUIDATION

Skybus Airlines, Inc., a Delaware corporation (the *"Debtor"*), proposes the plan of liquidation set forth below (the *"Plan"*) pursuant to chapter 11 of title 11 of the United States Code (the *"Bankruptcy Code"*).

### ARTICLE I

### DEFINITIONS AND INTERPRETATION

1.1   *DEFINITIONS.*  As used herein, the following terms have the respective meanings specified below (such meaning to be equally applicable to both the singular and the plural, and masculine and feminine forms of the terms defined):

   1.1.1   *"Administrative Claim"* means an administrative expense of or Claim against the Debtor under section 503 of the Bankruptcy Code including, but not limited to, any actual and necessary expenses of preserving the Assets of the Debtor, any fees or charges assessed against the Debtor under section 1930, chapter 123 of title 28 of the United States Code, and other Claims as ordered by the Bankruptcy Court, that are entitled to priority under section 507(a)(1) of the Bankruptcy Code.

   1.1.2   *"Allowed"* when used as an adjective modifying the word "Claim," means any Claim against the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last day for filing proofs of claim against the Debtor, or which has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or an order of the Bankruptcy Court, or as to which an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order.  The phrase *"Allowed amount of a Claim"* or terms of similar import means the amount of the Claim that has been Allowed.  Unless otherwise specified in the Plan, the phrase *"Allowed Claim"* or terms of

2

similar import shall not, for purposes of computation of distributions under the Plan, include interest on the amount of a Claim from and after the Commencement Date.

1.1.3 *"American Express"* means American Express Travel Related Services Company, Inc.

1.1.4 *"Assets"* means all right, title, and interest in and to any and all property of every kind or nature at any time owned by the Debtor, including, but not limited to, property as defined in section 541 of the Bankruptcy Code (each identified item of property being sometimes referred to as an *"Asset"*).

1.1.5 *"Available Cash"* means all Cash of the Debtor or the Liquidation Trust, as the case may be, including all Cash on deposit in the Trust Accounts, less (a) the Cash distributions to be made pursuant to *Article VII* other than to satisfy Allowed Class 5 Claims or, in accordance with *Section 7.11.4*, to be distributed to the Holders of Class 6 Interests, and (b) the Cash held in the Disputed Claims Reserves.

1.1.6 *"Bankruptcy Claims"* means all claims, rights and causes of action of the Estate that are created or preserved by the Bankruptcy Code, including all preference, fraudulent conveyance and other avoidance claims, rights and causes of action arising under Chapter 5 of the Bankruptcy Code, and such other causes of action (whether or not created or preserved by the Bankruptcy Code) as the Debtor has or may have against any third party that is Estate property pursuant to section 541 of the Bankruptcy Code.

1.1.7 *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware or, to the extent of any withdrawal of the reference of the Chapter 11 Case or any proceedings arising therein or relating thereto and commenced in said bankruptcy court made pursuant to 28 U.S.C. § 157, the United States District Court for the district of which said bankruptcy court constitutes a unit.

1.1.8 *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as amended from time to time, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.1.9 *"Beneficiary"* means the Holder of any Allowed Claim against the Estate or other Person entitled, by the terms of the Plan or the Liquidation Trust Agreement, to a distribution from the Liquidation Trust.

1.1.10 *"Business Day"* means any day other than a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

1.1.11 *"Card"* means a debit or credit card or other payment or account access device bearing, or marketed using, the service mark of VISA, Mastercard, Discover or American Express.

651.002-24270

1.1.12 *"Card Processing Agreement"* means an agreement between the Debtor and a Card Processor which provides for the Debtor to accept as payment for goods sold and/or services rendered by the Debtor a Card or Cards and providing for the Card Processor to pay or settle with the Debtor for charges made with the Card or Cards in accordance with the terms and conditions thereof or of rules and procedures referred to therein.

1.1.13 *"Card Processors"* means Huntington, American Express and Discover, in their respective capacities as servicers or processors under a Card Processing Agreement with Skybus. *"Card Processor"* means any one of such Card Processors.

1.1.14 *"Cash"* means lawful currency of the United States of America.

1.1.15 *"Chapter 11 Case"* means the case under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court by the filing of a voluntary petition by the Debtor on the Commencement Date and that is captioned In re *Skybus Airlines, Inc.*, Case No. 08-10637 (CSS).

1.1.16 *"Claim"* means a claim against the Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

1.1.17 *"Claims Agent"* means Kurtzman Carson Consultants, LLC, or such other Person who may from time to time be designated by Skybus, with the approval of the Bankruptcy Court, as a successor claims agent in connection with the Chapter 11 Case.

1.1.18 *"Class"* means a category or group of Claims or Equity Interests designated as a class or subclass in Article II.

1.1.19 *"Commencement Date"* means April 5, 2008, the date on which the Debtor commenced its case under chapter 11 of the Bankruptcy Code.

1.1.20 *"Committee"* means the official committee of unsecured Creditors appointed in the Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code, as presently or hereafter constituted.

1.1.21 *"Common Stock"* means the duly authorized, validly issued and outstanding shares of common stock of Skybus, par value $.01 per share, and all options, warrants and other rights to purchase any such shares, however and whenever arising or evidenced.

1.1.22 *"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.1.23 *"Confirmation Hearing"* means the hearing at which the Bankruptcy Court will consider confirmation of the Plan.

4

1.1.24 *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan, in a form that is acceptable to the Proponent, pursuant to section 1129 of the Bankruptcy Code.

1.1.25 *"Convenience Claim"* means an Unsecured Claim that is Allowed in an amount that does not exceed $1,000 or which has been reduced by the Holder thereof to $1,000.

1.1.26 *"Creditor"* means a Person who holds a Claim against the Debtor.

1.1.27 *"Disallowed Claim"* means any Claim that is not an Allowed Claim or a Disputed Claim.

1.1.28 *"Disbursing Agent"* means the Liquidation Trustee or such other Person as may be designated by Skybus, in consultation with the Committee, until its dissolution, and thereafter the Steering Committee, to make distributions required under the Plan.

1.1.29 *"Disclosure Statement"* means the written statement, dated January 30, 2009, which, among other things, describes the Plan and is prepared and distributed in accordance with section 1125 of the Bankruptcy Code and Bankruptcy Rule 3018.

1.1.30 *"Discover"* means Discover Financial Services, LLC.

1.1.31 *"Disputed Claim"* means a Claim (or portion thereof) against the Debtor as to which: (a) a proof of Claim has been filed, or deemed filed, under applicable law or order of the Bankruptcy Court, with the Bankruptcy Court; (b) an objection has been timely filed; and (c) such objection has not been: (i) withdrawn, (ii) overruled or denied in whole by a Final Order, or (iii) granted in whole or part by a Final Order, *provided* that the Bankruptcy Court may estimate a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code. For purposes of the Plan, a Claim shall be considered a Disputed Claim in its entirety if: (x) before the time that an objection has been or may be filed, the amount of the Claim specified in the proof of Claim exceeds the amount of any corresponding Claim scheduled by a Debtor or the Trustee in the Schedules; (y) there is a dispute as to classification of the Claim; or (z) the Claim is unliquidated.

1.1.32 *"Disputed Claims Reserves"* means the reserves established pursuant to *Section 8.2.2* to provide for distributions on account of Disputed Claims.

1.1.33 *"Distribution Dates"* means the Effective Date, or as soon thereafter as reasonably practicable, and the first Business Day of each calendar quarter beginning thereafter or such other dates as the Liquidation Trustee shall establish, in consultation with the Steering Committee, for making distributions.

1.1.34 *"Effective Date"* means a date to be determined by the Proponent no later than the thirtieth (30th) Business Day following the date on which the condition(s) set forth in *Article XI* have been satisfied so long as no stay of the Confirmation Order is in effect.

651.002-24270

1.1.35 *"Equity Interest"* means an equity security consisting of Common Stock or Preferred Stock.

1.1.36 *"Estate"* means the estate of the Debtor created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.1.37 *"Face Amount"* has the meaning given therefor in *Section 8.2.3(a)*.

1.1.38 *"Final Order"* means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction which may hear appeals from the Bankruptcy Court which having not been reversed, modified or amended and not being stayed, and the time to appeal from which or to seek review or rehearing or petition for *certiorari* from which having expired without an appeal or application for review or rehearing having been filed, has become final and is in full force and effect.

1.1.39 *"General Unsecured Claim"* means any Unsecured Claim that is not a Convenience Claim.

1.1.40 *"Holder"* means a Person holding a Claim or Equity Interest.

1.1.41 *"Huntington"* means, collectively, The Huntington National Bank and Huntington Merchant Services.

1.1.42 *"Liquidation Trust"* means a trust established on the Effective Date pursuant to the Liquidation Trust Agreement.

1.1.43 *"Liquidation Trust Agreement"* means a trust agreement, dated the Effective Date, between the Debtor and the Liquidation Trustee, pursuant to which the Liquidation Trust is established and which is in substantially the form of *Exhibit 1.1.43*.

1.1.44 *"Liquidation Trust Assets"* means the Assets and all other property and proceeds of property of the Estate or of Skybus, including Bankruptcy Claims existing as of and following the Effective Date.

1.1.45 *"Liquidation Trust Expenses"* means any and all reasonable fees, costs and expenses incurred by the Liquidation Trust, the Liquidation Trustee (or any Disbursing Agent, Person or Professional engaged by the Liquidation Trustee) or the Steering Committee on or after the Effective Date in connection with any of their duties under the Plan or the Liquidation Trust Agreement, including any reasonable administrative fees, attorneys' fees and expenses, insurance fees, taxes and escrow expenses.

1.1.46 *"Liquidation Trust Expenses Account"* means the segregated trust account to be established and maintained pursuant to *Article VII* to fund the payment of Liquidation Trust Expenses.

651.002-24270

1.1.47 *"Liquidation Trustee"* means the Person identified as the trustee of the Liquidation Trust in the Disclosure Statement or such other Person who may be, on or before the Confirmation Date, selected to serve as the trustee of the Liquidation Trust by the Debtor, with the approval of the Committee.

1.1.48 *"Net Bankruptcy Claims Proceeds"* means the amounts, if any, collected by Skybus from time to time on account of its prosecution of any Bankruptcy Claim, less costs and expenses of collection, including court costs, attorneys' fees and expenses and other legal expenses, if any, for which any Person may have a lien arising from services rendered in connection with the prosecution of such Bankruptcy Claim or otherwise payable out of said amounts.

1.1.49 *"Permitted Discretion"* means a determination made in good faith and in the exercise of reasonable business judgment.

1.1.50 *"Person"* means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any subdivision thereof, or any other entity.

1.1.51 *"Plan"* means, until the Confirmation Date, this plan as proposed under chapter 11 of the Bankruptcy Code and as the same may be altered, amended, or modified from time to time, and from and after the Confirmation Date, this plan as confirmed by the Bankruptcy Court.

1.1.52 *"Plan Documents"* means the documents that aid in effecting the Plan and that are specifically identified herein as Plan Documents or which, in the view of the Proponent, become necessary or appropriate to effectuate the Plan, which documents, to the extent feasible, shall be filed on or prior to the Confirmation Hearing.

1.1.53 *"Preferred Stock"* means the Series A Preferred Stock, Series B Preferred Stock and Series C Preferred Stock.

1.1.54 *"Priority Claim"* means any Claim, other than a Ticketholder Claim, against the Debtor, if Allowed, to the extent entitled to priority in payment under sections 507(a)(1)-(7) of the Bankruptcy Code.

1.1.55 *"Priority Tax Claim"* means any Claim against the Debtor to the extent entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.1.56 *"Proponent"* means the Debtor.

1.1.57 *"Pro Rata"* means a number (expressed as a percentage) equal to the proportion that an Allowed Class 5 Claim bears to the aggregate amount of Allowed Claims in Class 5 as of the date of determination. Solely for the purpose of calculating the amount to be distributed to Holders of Allowed Class 5 Claims and reserved for the Holders of Disputed Class

7

5 Claims on a Distribution Date, the Liquidation Trust shall treat each Disputed Class 5 Claim as an Allowed Claim in the full amount of such Disputed Class 5 Claim.

  1.1.58 *"Schedules"* means the respective schedules of assets and liabilities filed by the Debtor with the Bankruptcy Court in accordance with section 521(i) of the Bankruptcy Code, as amended from time to time.

  1.1.59 *"Secured Claim"* means any Claim that is secured by, or payment of which is provided for by, a Lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value, as of the Effective Date or such other date as shall be established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code or as otherwise agreed upon in writing by the Claim Holder and Skybus.

  1.1.60 *"Series A Preferred Stock"* means the duly authorized, validly issued and outstanding shares of Series A Convertible Preferred Stock of Skybus, par value $.01 per share.

  1.1.61 *"Series B Preferred Stock"* means the duly authorized, validly issued and outstanding shares of Series B Convertible Preferred Stock of Skybus, par value $.01 per share.

  1.1.62 *"Series C Preferred Stock"* means the duly authorized, validly issued and outstanding shares of Series C Convertible Preferred Stock of Skybus, par value $.01 per share.

  1.1.63 *"Skybus"* means the Debtor and, on and after the Effective Date, the Liquidation Trust.

  1.1.64 *"Solicitation Package"* means a solicitation package composed of (a) a copy of the Disclosure Statement as approved by the Bankruptcy Court, (b) a copy of the Bankruptcy Court's order approving the Disclosure Statement, (c) the Confirmation Hearing Notice, and (d) the appropriate Ballot with a pre-addressed, postage paid return envelope.

  1.1.65 *"Steering Committee"* means a committee initially composed of no more than five (5) Persons and no fewer than one (1) Person, each of which may, but need not, be a member of the Committee and each of which (a) shall be the Holder of a Class 5 Claim, (b) shall have been selected by the Committee on or before the Effective Date, and (c) shall be willing to fulfill for the benefit of Class 5 Creditors the specific duties and responsibilities of the Steering Committee as are set forth in the Plan and the Liquidation Trust Agreement.

  1.1.66 *"Ticketholder Claim"* means an Allowed Claim against the Debtor arising from Skybus's failure to provide air transportation to a Person who purchased from Skybus a ticket for such air transportation by use of a Card.

651.002-24270

1.1.67 *"Treasury Rate"* means the prevailing yield for U.S. Treasury Notes having a maturity of five (5) years, as published in *The Wall Street Journal* for the Business Day immediately preceding the Confirmation Date.

1.1.68 *"Trust Accounts"* means the Liquidation Expenses Trust Account, the Priority Claims Trust Account and the Unsecured Claims Trust Account. *"Trust Account"* means any one of such accounts.

1.1.69 *"Unsecured Claim"* means any Claim against the Debtor, other than a Secured Claim, Administrative Claim, Priority Claim, Priority Tax Claim or Ticketholder Claim.

1.2 *INTERPRETATION AND RULES OF CONSTRUCTION.* Unless otherwise specified, all *Section, Article, Schedule* and *Exhibit* references in the Plan are to the respective Section in, Article of, or Schedule or Exhibit to, the Plan, as the same may be amended, waived, or modified from time to time in accordance with the provisions hereof. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan (*excluding* the Plan Documents, unless made applicable thereto pursuant to an express provision thereof). When anything is described or referred to in this Plan in general terms and one or more examples or components of what has been described or referred to generally is associated with that description (whether or not following the word "including"), the examples or components shall be deemed illustrative only and shall not be construed as limiting the generality of the description or reference in any way. All personal pronouns used in the Plan, whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural, and the plural shall include the singular.

1.3 *OTHER TERMS.* The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular Section, Subsection, or clause contained in the Plan. A capitalized term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code or Bankruptcy Rules.

1.4 *HEADINGS.* Headings are used in the Plan for convenience of reference only and shall not constitute a part of the Plan for any other purpose. Headings shall not limit or otherwise affect the provisions of the Plan.

1.5 *INCORPORATION OF EXHIBITS.* Each of the Plan Documents constituting an exhibit to the Disclosure Statement or an exhibit to the Plan is incorporated into and is a part of the Plan as if set forth in full herein.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1 *CLAIMS AND EQUITY INTERESTS CLASSIFIED.* For purposes of voting on and making distributions under the Plan, all Claims (except for Administrative Claims and Priority Tax Claims) and all Equity Interests shall be classified as set forth in *Section 2.3,*

651.002-24270

*provided* that no Holder of a Disputed Claim shall be entitled to vote or to receive distributions under the Plan except as otherwise specifically provided for elsewhere in the Plan or by order of the Bankruptcy Court.

2.2    *ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS.*  As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims against Skybus shall not be classified for purposes of voting on or receiving distributions under the Plan.  All such Claims shall be treated separately as unclassified Claims on the terms set forth in *Article IV*.

2.3    *CLAIMS AGAINST AND EQUITY INTERESTS IN SKYBUS.*

2.3.1    **Class 1 Claims**.  Class 1 consists of all Priority Claims.

2.3.2    **Class 2 Claims**.  Class 2 consists of all Secured Claims.  For purposes of the Plan, all Secured Claims held by a single Holder are designated as a separate subclass.

2.3.3    **Class 3 Claims**.  Class 3 consists of all Ticketholder Claims.  For purposes of the Plan, (i) Ticketholder Claims which do not exceed $1,000 per Claim, (ii) Ticketholder Claims that are held by individuals which exceed $1,000 but do not exceed $2,425 per individual and arise from a purchase for personal, family or household purposes, and (iii) all other Ticketholder Claims, are each designated as a separate subclass.

2.3.4    **Class 4 Claims**.  Class 4 consists of all Convenience Claims.

2.3.5    **Class 5 Claims**.  Class 5 consists of all General Unsecured Claims.

2.3.6    **Class 6 Equity Interests**.  Class 6 consists of all Equity Interests consisting of shares of Preferred Stock.

2.3.7    **Class 7 Equity Interests**.  Class 7 consists of all Equity Interests consisting of Common Stock.  For purposes of the Plan, Equity Interests consisting of shares of common stock of Skybus, par value $.01 per share, and each type or category of Equity Interests consisting of options, warrants or other rights to purchase any such shares which is not substantially similar to all other such options, warrants or rights are each designated as a separate subclass.

# ARTICLE III

## IDENTIFICATION OF IMPAIRED CLASSES OF
## CLAIMS AND EQUITY INTERESTS

3.1    *UNIMPAIRED CLASSES OF CLAIMS.*  With the exception of the Impaired Classes specified in *Section 3.2*, all Classes of Claims and Equity Interests are Unimpaired under the Plan.

10

3.2    *IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS.*  Class 5 Claims are Impaired, and Class 6 and Class 7 Interests are Impaired, under the Plan.

3.3    *IMPAIRMENT CONTROVERSIES.*  If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or Class of Interests, is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, resolve such controversy.

## ARTICLE IV

## TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS

4.1    *PAYMENT OF ADMINISTRATIVE CLAIMS.*  Subject to the provisions of sections 330 and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Claim shall receive on the initial Distribution Date, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Administrative Claim, Cash equal to the amount of such Allowed Claim, unless such Holder shall have agreed to different treatment of such Claim; *provided* that Allowed Administrative Claims representing obligations incurred by Skybus in the ordinary course of business or otherwise assumed by Skybus pursuant to the Plan will be paid or performed by Skybus in accordance with the terms and conditions of each agreement relating thereto.  All Administrative Claims of Professional Persons incurred after the Effective Date shall be paid as provided in *Section 7.14*.

4.2    *PAYMENT OF PRIORITY TAX CLAIMS.*  Unless otherwise agreed between the Holder of a Priority Tax Claim and Skybus, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, each Holder of such an Allowed Priority Tax Claim shall receive on the initial Distribution Date, on account of and in full satisfaction, settlement, release and discharge of, and in exchange for, such Claim, Cash, in the full amount of such Allowed Priority Tax Claim.

## ARTICLE V

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

5.1    *CLAIMS AGAINST AND EQUITY INTERESTS IN SKYBUS.*  Claims against and Equity Interests in Skybus shall be treated as follows, except, in the case of Claims, to the extent any Claim shall have been paid or satisfied by performance prior to the Effective Date:

5.1.1    **Class 1 (Priority Claims).**  Class 1 Claims are Unimpaired.  Unless otherwise agreed between the Holder of an Allowed Priority Claim and Skybus, each Holder of an Allowed Priority Claim under sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code shall receive on the initial Distribution Date, on account of and in full satisfaction, settlement, release and discharge of, and in exchange for, such Claims, Cash in the full amount of such Allowed Priority Claim.

5.1.2    **Class 2 (Secured Claims).**  Class 2 Claims are Unimpaired.  At Skybus's option, each Holder of an Allowed Class 2 Claim shall either (a) retain unaltered the legal,

651.002-24270

equitable and contractual rights to which such Allowed Class 2 Claim entitles the Holder thereof or (b) be treated in accordance with section 1124(2) of the Bankruptcy Code.

5.1.3   **Class 3 (Ticketholder Claims).**   Class 3 Claims are Unimpaired.   Each Holder of an Allowed Class 3 Claim shall retain unaltered the legal, equitable and contractual rights to which such Allowed Class 3 Claim entitles the Holder thereof.

5.1.4   **Class 4 (Convenience Claims).**   Class 4 Claims are Unimpaired.   At Skybus's option, each Holder of an Allowed Class 4 Claim shall retain unaltered the legal, equitable and contractual rights to which such Allowed Class 4 Claim entitles the Holder thereof. In the case of each Allowed Class 4 Claim which entitles the Holder thereof to payment of Cash on or before the Effective Date, the Holder of such Claim shall receive on the initial Distribution Date, on account of and in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Claim, Cash in the full amount to which such Allowed Claim entitles the Holder thereof.

5.1.5   **Class 5 (General Unsecured Claims).**   Class 5 Claims are Impaired. Each Holder of an Allowed Class 5 Claim shall receive, on account of and in full satisfaction, settlement, release and discharge of, and in exchange for, such Claim, its Pro Rata share of Available Cash to be distributed in accordance with the provisions of ***Section 7.11*** and the terms of the Liquidation Trust Agreement.

5.1.6   **Class 6 (Preferred Stock Equity Interests).**   Class 6 Interests are Impaired. Each Holder of an Allowed Class 6 Equity Interest shall receive, on account of and in full satisfaction, settlement, release and discharge of, and in exchange for, such Equity Interest, a ratable share of Available Cash remaining to be distributed in accordance with the terms of the Liquidation Trust Agreement after payment of the full Allowed amounts of all Class 5 Claims, plus interest in accordance with the provisions of ***Section 7.11.4***, equal to the proportion that the preferential amount to which such Holder is entitled on account of its Allowed Class 6 Interests (i.e. $5.00 per share of Series A Preferred Stock, $5.50 per share of Series B Preferred Stock, and $5.50 per share of Series C Preferred Stock, plus in the case of each share of Preferred Stock, regardless of series, cumulative dividends at the rate of $.50 per share per annum, from the applicable date of original issuance of such share through the applicable Distribution Date), bears to the total of the preferential amounts to which all Holders of Allowed Class 6 Interests are entitled. All shares of Preferred Stock shall be canceled and rendered void and of no further force or effect on the Effective Date.   The certificates representing such Preferred Stock shall, from and after the Effective Date, represent solely the right of the Holders thereof to receive distributions on account of the Equity Interests represented thereby to which such Holders are entitled in accordance with the provisions of the Plan.

5.1.7   **Class 7 (Common Stock Interests).**   Class 7 Interests are Impaired.   The Holders of Class 7 Interests shall not receive or retain any property on account of their Class 7 Interests. All shares of Common Stock shall be canceled and rendered void and of no further force or effect on the Effective Date.

651.002-24270

5.2   *SATISFACTION OF CLAIMS AND INTERESTS.*   The treatment of, and consideration to be received by, Holders of Allowed Claims and Allowed Equity Interests pursuant to this *Article V* will be in full satisfaction, settlement, release and discharge of and exchange for their respective Claims against or Equity Interests in Skybus.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN

6.1   *VOTING CLASSES.*   Each Holder of an Allowed Claim or Equity Interest in Classes 5 and 6 shall be entitled to vote to accept or reject the Plan, unless otherwise ordered by the Court.

6.2   *ACCEPTANCE BY IMPAIRED CLASSES.*

6.2.1   **Claims.**   An impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than a Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims voting in such Class have voted to accept the Plan, and (b) more than one-half in number of Holders (other than the Holders designated under section 1126(c) of the Bankruptcy Code) of such Allowed Claims voting in such Class have voted to accept the Plan.

6.2.2   **Equity Interests.**   An impaired Class of Equity Interests shall have accepted the Plan if the Holders (other than a Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Equity Interests voting in such Class have voted to accept the Plan.

6.3   *PRESUMED ACCEPTANCE.*   Classes 1, 2 and 3 are unimpaired under the Plan, and, therefore, are conclusively presumed to accept the Plan.

6.4   *PRESUMED REJECTION.*   The Holders of Equity Interests in Class 7 shall not receive or retain any property under the Plan and, therefore, Class 7 is deemed to reject the Plan.

6.5   *CRAMDOWN.*   Skybus reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the rejection of the Plan by Class 7 or any other Class and/or (b) modify the Plan pursuant to the provisions of *Section 13.6* to provide treatment sufficient to assure that the Plan does not discriminate unfairly, and is fair and equitable, with respect to the Class or Classes not accepting the Plan, and, in particular, the treatment necessary to meet the requirements of sections 1129(a) and (b) of the Bankruptcy Code with respect to the rejecting Classes and any other Classes affected by such modifications.

6.6   *SEVERANCE.*   If the Bankruptcy Court determines that any provisions of the Plan are prohibited by the Bankruptcy Code or render the Plan unconfirmable under section 1129 of the Bankruptcy Code, the Proponent reserves the right to sever such provisions from the Plan and to request that the Plan, as so modified, be confirmed.

651.002-24270

# ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1 *CORPORATE EXISTENCE.* On or promptly following the Effective Date, Skybus will enter into such transactions and take such actions as may be necessary or appropriate to dissolve or otherwise terminate its corporate existence as of the Effective Date. Notwithstanding the foregoing and regardless of whether the actions described in the preceding sentence have been taken, upon the transfer of the Assets to the Liquidation Trust pursuant to the terms of the Plan, Skybus shall be deemed dissolved and its business operations withdrawn for all purposes without any necessity of filing any document, taking any further action or making any payment to any governmental authority.

7.2 *LIQUIDATION AND DISSOLUTION TRANSACTIONS.* The actions to effect the liquidation of the Assets and the dissolution or termination of the existence of Skybus may include (a) the execution and delivery of appropriate agreements or other documents of transfer, disposition, liquidation or dissolution, containing, among other terms, terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law, (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any Asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan, (c) the filing of appropriate certificates or articles of dissolution or similar instruments with the applicable governmental authorities, and (d) the taking of all other actions that Skybus determines to be necessary or appropriate, including the making of filings or recordings that may be required by applicable law in connection with the liquidation of the Assets and the dissolution or termination of the corporate existence of Skybus. The filing of a certificate or articles of dissolution shall be deemed authorized and approved in all respects and any and all other matters provided under the Plan concerning the corporate structure of Skybus or corporate action by Skybus shall be deemed to have occurred and shall be in effect without any requirement of further action or order of the Bankruptcy Court.

7.3 *FUNDING OF PLAN.* From the inception of the Chapter 11 Case and continuing up to the date of the Plan, Skybus has engaged in sales and other dispositions and collection of its Assets, and from and after the date of the Plan and continuing through confirmation of the Plan, Skybus will continue the process of selling or otherwise disposing of and collecting the remainder of its Assets. On the Effective Date, Skybus shall transfer, assign and convey to the Liquidation Trust all of its Bankruptcy Claims and all of its other Assets, including the proceeds of its completed sales, dispositions and collections, including proceeds of pending sales, and all other Cash on hand (less expenses of liquidation and other expenses paid as authorized by the Bankruptcy Code or order of the Bankruptcy Court as of the Effective Date), whereupon ownership of all such Bankruptcy Claims and other Assets shall vest in the Liquidation Trust, free and clear Claims, Liens and Equity Interests, to be managed by the Liquidation Trustee in accordance with the terms of the Liquidation Trust Agreement, the Plan and the Confirmation Order for the sole purpose of consummating and carrying out the terms of the Plan. All Cash in the Liquidation Trust, including the proceeds of all sales, dispositions and collections of Assets transferred to the Liquidation Trust, less expenses of administering the Liquidation Trust, shall

651.002-24270

be available for distribution to Holders of Allowed Claims and Equity Interests in accordance with the terms of the Liquidation Trust Agreement, the Plan and the Confirmation Order.

7.4 *CREATION OF LIQUIDATION TRUST.* On the Effective Date, the Debtor and the Liquidation Trustee shall enter into the Liquidation Trust Agreement, pursuant to which the Liquidation Trust shall be established for the following purposes:

7.4.1 **Management of Trust Assets**. To manage the Liquidation Trust Assets through the orderly liquidation, collection, and maintenance of the Liquidation Trust Assets in a commercially reasonable manner, without the supervision or approval of the Bankruptcy Court, in good faith so as to maximize the value of the Liquidation Trust Assets for the benefit of the Beneficiaries.

7.4.2 **Distribution of Trust Assets**. To distribute, as expeditiously as reasonably possible, the Liquidation Trust Assets to the Beneficiaries in accordance with the terms of the Plan and the Liquidation Trust Agreement.

7.4.3 **Prosecution of Claims Objections**. To prosecute objections made but not resolved prior to the Effective Date and to make objections, if appropriate, to Claims, and to determine the proper recipients of, and amounts of, distributions to be made from the Liquidation Trust.

7.4.4 **Pursuance of Bankruptcy Claims**. To pursue any Bankruptcy Claims.

7.4.5 **Closing the Case**. To close the Bankruptcy Case.

7.4.6 **Taking Other Appropriate Actions**. To take all other actions necessary or appropriate to implement and consummate the Plan.

7.5 *REPRESENTATIVE OF THE ESTATE.* The Liquidation Trustee shall be a "representative of the estate" under section 1123(b)(3)(B) of the Bankruptcy Code and shall have capacity, standing and party-in-interest status to pursue any Bankruptcy Claims and to prosecute objections to any Disputed Claims and shall have the benefits of, and may assert any defenses that may otherwise have been asserted by, the Debtor or a "trustee" under the Bankruptcy Code.

7.6 *BENEFICIARIES OF THE LIQUIDATION TRUST.* Initial Beneficiaries of the Liquidation Trust will be identified from the Claims Report (as defined in the Liquidation Trust Agreement) with respect to the Estate, as provided to the Liquidation Trustee by the Claims Agent on the Effective Date. Beneficiaries of the Liquidation Trust may thereafter transfer their interests as Beneficiaries in the Liquidation Trust only in accordance with the terms of the Liquidation Trust Agreement.

7.7 *FUNDING OF THE LIQUIDATION TRUST.* The sources of funding of the Liquidation Trust shall include the Liquidation Trust Assets and any proceeds thereof. The Liquidation Trustee shall promptly deposit proceeds of any Liquidation Trust Assets, including the Net Bankruptcy Claims Proceeds, into the appropriate Trust Account, determined in accordance with the provisions of *Section 7.8*, following receipt of same.

15

651.002-24270

7.8     *CREATION OF THE TRUST ACCOUNTS.*  On or prior to the Effective Date, the Liquidation Trustee will establish in its own name with federally insured United States banks each of the Trust Accounts.

### 7.8.1  Liquidation Trust Expenses Account.

(a)     *Initial Funding.*  On the Effective Date, following the transfer of Liquidation Trust Assets to the Liquidation Trust pursuant to Article 2.3 of the Liquidation Trust Agreement, the Liquidation Trustee will fund the Liquidation Trust Expenses Account with Cash in an amount determined by the Liquidation Trustee, in consultation with the Committee, to be necessary to pay all Liquidation Trust Expenses in accordance with the terms of the Plan and the Liquidation Trust Agreement.

(b)     *Use of Funds.*  Except as otherwise ordered by the Bankruptcy Court, the Liquidation Trustee, in its capacity as Disbursing Agent, will pay Liquidation Trust Expenses from the Liquidation Trust Expenses Account, without the need for further Bankruptcy Court approval.  Cash in the Liquidation Trust Expenses Account will also be used to pay taxes owing in respect of any amounts included in the Liquidation Trust Expenses Account in accordance with Articles 3.2 and 10.4 of the Liquidation Trust Agreement.

(c)     *Subsequent Funding.*  If, at any time after the initial funding of the Liquidation Trust Expenses Account as contemplated by Article 3.2 of the Liquidation Trust Agreement, the Liquidation Trustee determines that the Cash balance of the Liquidation Trust Expenses Account will be insufficient to make all payments payable therefrom in accordance with the terms of the Plan and the Liquidation Trust Agreement, the Liquidation Trustee may transfer from the Unsecured Claims Trust Account (to the extent Cash remains available in such account) to the Liquidation Trust Expenses Account Cash in an aggregate amount determined by the Liquidation Trustee, in consultation with the Steering Committee, to be necessary to ensure that the Cash balance of the Liquidation Trust Expenses Account will be sufficient to make all such payments.  To the fullest extent possible, any transfer pursuant to Article 3.2 of the Liquidation Trust Agreement will be accomplished in a manner intended to avoid or minimize any adverse impact on the ability to make distributions of the full Allowed amounts of Unsecured Claims in accordance with the terms of the Plan.

(d)     *Excess Funds.*  If, at any time after the initial funding of the Liquidation Trust Expenses Account pursuant to Article 3.2 of the Liquidation Trust Agreement, the Liquidation Trustee determines that the Cash balance of the Liquidation Trust Expenses Account is in excess of the amount that will be necessary to make all payments payable therefrom in accordance with the terms of the Plan and the Liquidation Trust Agreement, the Liquidation Trustee may transfer such excess to the Unsecured Claims Trust Account.

### 7.8.2  Priority Claims Trust Account.

(a)     *Initial Funding.*  On the Effective Date, after the initial funding of the Liquidation Trust Expenses Account in accordance with Article 3.2 of the Liquidation Trust

16

Agreement, the Liquidation Trustee will fund the Priority Claims Trust Account pursuant to the terms of Article 3.3 of the Liquidation Trust Agreement with Cash from the Liquidation Trust Assets.

(b)     *Use of Funds*.  Cash in the Priority Claims Trust Account will be used by the Liquidation Trustee only to (i) satisfy the Allowed amounts of Administrative Claims, Priority Tax Claims, Priority Claims, Convenience Claims and, to the extent provided by *Section 7.17.1*, Ticketholder Claims, and (ii) pay taxes owing in respect of the earnings on any amounts included in the Priority Claims Trust Account and designated as a Disputed Claims Reserve in accordance with the Plan.

(c)     *Subsequent Funding*.  If, at any time after the initial funding of the Priority Claims Trust Account pursuant to Article 3.3 of the Liquidation Trust Agreement, the Liquidation Trustee determines that the Cash balance of the Priority Claims Trust Account is insufficient to make all payments payable therefrom in accordance with the terms of the Plan and the Liquidation Trust Agreement, the Liquidation Trustee will transfer from the Unsecured Claims Trust Account (to the extent Cash remains available in such account) to the Priority Claims Trust Account Cash in an amount determined by the Liquidation Trustee, in consultation with the Steering Committee, to be necessary to ensure that the Cash balance of the Priority Claims Trust Account will be sufficient to make all such payments.  To the fullest extent possible, any transfer pursuant to Article 3.3(c) of the Liquidation Trust Agreement will be accomplished in a manner intended to avoid or minimize any adverse impact on the ability to make distributions of the full Allowed amounts of Unsecured Claims in accordance with the terms of the Plan.

(d)     *Excess Funds*.  If, at any time after the initial funding of the Priority Claims Trust Account pursuant to Article 3.3 of the Liquidation Trust Agreement, the Liquidation Trustee determines that the Cash balance of the Priority Claims Trust Account is in excess of the amount that will be necessary to make all payments payable therefrom in accordance with the terms of the Plan and the Liquidation Trust Agreement, the Liquidation Trustee may transfer such excess Cash to the Unsecured Claims Trust Account.

### 7.8.3    Unsecured Claims Trust Account.

(a)     *Initial Funding*.  On the Effective Date, after the initial funding of the Liquidation Trust Expenses Account and the initial funding of the Priority Claims Trust Account in accordance with *Sections 7.8.1(a)* and *7.8.2(a)*, respectively, and Articles 3.2 and 3.3 of the Liquidation Trust Agreement, respectively, the Liquidation Trustee will fund the Unsecured Claims Trust Account with the remainder of the Cash portion of the Liquidation Trust Assets.

(b)     *Deposit of New Cash Following the Effective Date*.  Any Cash that becomes available to the Liquidation Trust following the Effective Date, including as a result of the liquidation of any Liquidation Trust Assets and the receipt of any income or interest generated by the investment of Cash held in the Unsecured Claims Trust Account will be deposited in the Unsecured Claims Trust Account.

17

(c)    *Use of Funds.*  Cash in the Unsecured Claims Trust Account will be used by the Liquidation Trustee only to (i) fund the Liquidation Trust Expenses Account, Priority Claims Trust Account, as contemplated by *Sections 7.8.1(c)* and *7.8.2(c)*, respectively, and Articles 3.2 and 3.3 of the Liquidation Trust Agreement, respectively, (ii) satisfy Allowed Unsecured Claims against the Estate in accordance with the terms of the Plan, and (iii) pay taxes owing in respect of the earnings on any amounts included in the Unsecured Claims Trust Account and designated as a Disputed Claims Reserve in accordance with the Plan.

7.8.4   **Undeliverable Cash Trust Account.** After the Effective Date, if any distribution to a Holder of an Allowed Claim against the Estate is returned to the Liquidation Trustee as undeliverable subject to Article 3.5 of the Liquidation Trust Agreement, the Liquidation Trustee will deposit the undeliverable Cash in the Undeliverable Cash Trust Account pursuant to the terms of the Liquidation Trust Agreement.  The Liquidation Trustee will hold such funds, in a book-entry sub-account in the Undeliverable Cash Trust Account, for the benefit of such Holder.  Until such Holder notifies the Liquidation Trustee in writing of its then-current address, no attempt will be made to deliver subsequent distributions to such Holder, and any such distributions that such Holder would otherwise be entitled to receive will instead be transferred from the appropriate Trust Account to the Undeliverable Cash Trust Account and credited to such book-entry sub-account.  All Cash held in such book-entry sub-account for the benefit of such Holder will be invested by the Liquidation Trustee in a manner consistent with the investment and deposit guidelines set forth in the Liquidation Trust Agreement.  Any income or interest generated from such investment activities will be held in such book-entry sub-account for the benefit of such Holder until such Holder notifies the Liquidation Trustee in writing of its then-current address.  When such Holder notifies the Liquidation Trustee in writing of its then-current address as contemplated by Article 3.5 of the Liquidation Trust Agreement, the Liquidation Trustee will deliver to such Holder all Cash contained in such book-entry sub-account (net of provision for taxes owing in respect of amounts included in such book-entry sub-account).  In the event such Holder's right to assert a claim for undeliverable distributions is forfeited as contemplated by Article 5.2(b)(ii) of the Liquidation Trust Agreement or under the terms of the Plan, all Cash contained in such book-entry sub-account will be transferred from the Undeliverable Cash Trust Account to the appropriate Trust Account for redistribution to Holders of Allowed Claims entitled to distributions therefrom.

7.8.5   **Earnings on Deposits**. All dividends, interest and other earnings on sums deposited in any Trust Account shall be held in trust for the benefit of the Holders of Claims determined in accordance with the Plan to be entitled to the payment of the sums so deposited.

7.9   *INVESTMENT OF TRUST ASSETS.*  The Liquidation Trustee shall be permitted, from time to time, to deposit or invest all or a portion of Trust Assets consisting of Cash in a manner consistent with the investment and deposit guidelines set forth in the Liquidation Trust Agreement or otherwise in bank accounts or investments that are insured or guaranteed by the United States or a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States, United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities, or other investments permitted by section 345 of the Bankruptcy Code, using prudent efforts to enhance the rates of interest without inordinate credit

18

risks or interest rate risks. All interest earned on such Cash shall be held by the Liquidation Trust and used and distributed in accordance with the Plan and the Liquidation Trust Agreement.

7.10 *TAX TREATMENT.* The Liquidation Trust (which consists of the various Trust Accounts) is intended to be treated for U.S. federal income tax purposes, in part, as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d), for the benefit of Holders of Allowed Claims and Equity Interests entitled to distributions of assets transferred to the Liquidation Trust, and otherwise as one or more disputed ownership funds within the meaning of Treasury Regulations section 1.468B-9(b)(1). The Liquidation Trustee will act as the "administrator," within the meaning of Treasury Regulations section 1.468B9(b)(2), of such funds. The Disputed Claims Reserves will be subject to the continuing jurisdiction of the Bankruptcy Court, and, as a result, no money or property can be paid or distributed from the Disputed Claims Reserves to, or on behalf of, a "claimant" or the "transferor" (as such terms are defined in Treasury Regulations sections 1.468B-9(b)(3) and 1.468B-9(b)(7), respectively) except if, as and when such Claims become Allowed Claims (or Liquidation Trust Expenses) pursuant to the procedures for allowing Claims (or incurring and paying Liquidation Trust Expenses) and making distributions prescribed in the Plan.

7.11 *DISTRIBUTIONS FROM THE LIQUIDATION TRUST.* Distributions to Holders of Allowed Claims under the Plan shall be made from the Liquidation Trust on each Distribution Date in accordance with this *Section 7.11* and any other applicable provision of the Plan. Except for Professional Claims and as otherwise stated herein, distributions shall be made on dates and in such amounts as the Liquidation Trustee determines in consultation with the Steering Committee. The amount of distributions to be made to Holders of Allowed Claims in each Class shall be calculated as if each Disputed Claim in the Class were an Allowed Claim in its Face Amount.

7.11.1 **Address and Identification of Beneficiaries**. Subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth the applicable Claims Report. Prior to making any distribution to a Holder, the Liquidation Trustee may request written notification of the Holder's federal taxpayer identification number or social security number if the Liquidation Trustee determines, in its Permitted Discretion, that such information (i) is necessary to fulfill its tax reporting and withholding obligations and (ii) has not been provided in the applicable Claims Report or otherwise. The Liquidation Trustee, in its Permitted Discretion, may suspend distributions to any Holder that has not provided its federal taxpayer identification number or social security number, as the case may be, after a request is made pursuant to and in accordance with the terms of Article 5.2(a) of the Liquidation Trust; *provided* that such distributions will be deemed unclaimed property under § 347(b) of the Bankruptcy Code at the expiration of 180 days from the later of (i) Effective Date or (ii) the date an initial attempt shall have been made to make a distribution on account of such Claim. After such date, the claim of any other Holder to such property or interest in property will be discharged and forever barred, and the monies held on account of such voided checks shall be used for the benefit of creditors as provided in the Plan.

7.11.2 **Initial Distributions**. On the initial Distribution Date, the Liquidation Trustee shall make distributions in accordance with the relevant provisions of this *Article VII*,

651.002-24270

for payments on account Allowed Priority Claims and Allowed Class 5 Claims, and the relevant provisions of *Article VIII*, for the initial funding of the Disputed Claims Reserves.

7.11.3 **Subsequent Distributions**. On each subsequent Distribution Date, the Liquidation Trustee shall make distributions in accordance with the relevant provisions of this *Article VII*, for payments on account of Liquidation Trust Expenses and Allowed Class 5 Claims, and the relevant provisions of *Article VIII*, on account of Disputed Claims, to the extent such Claims become Allowed Claims.

7.11.4 **Class 6 Equity Interests**. In the event that each Holder of an Allowed Class 5 Claim shall receive distributions of Cash in accordance with the provisions of the Plan in the Allowed amount of his Claim, together with interest on the amount of each such distribution for the number of days between the Commencement Date and the date of its receipt of such distribution, calculated at the Treasury Rate, then the Liquidation Trustee shall make distributions to Holders of Equity Interests consisting of Preferred Stock in the aggregate amount of Available Cash from time to time held in the General Unsecured Claims Trust Account in accordance with the provisions of *Section 5.1.7*. As a condition to receiving from the Disbursing Agent distributions provided for under the Plan in respect of Equity Interests consisting of Preferred Stock, any Holder thereof shall be required to surrender its certificate or certificates or other instruments representing such Equity Interests, accompanied by duly executed and completed letters of transmittal, to the Disbursing Agent. All such instruments shall be canceled. The Disbursing Agent shall make such distributions only to Holders of such Equity Interests who have surrendered such instruments as herein provided, except as otherwise provided in the Liquidation Trust Agreement.

7.11.5 **Postponed and De Minimis Distributions.** Notwithstanding anything to the contrary in the Plan or the Liquidation Trust Agreement, if the Liquidation Trustee determines, with the consent of the Steering Committee, that the amount of any quarterly distribution is too small to justify the administrative costs associated with such distribution, the Liquidation Trustee may (i) postpone such quarterly distribution until the next quarterly Distribution Date, or (ii) if quarterly distributions have been previously postponed with respect to two or more quarterly Distribution Dates and the Liquidation Trustee determines, with the consent of the Steering Committee, that the amount of assets to be distributed will not increase to an amount that justifies the administrative costs associated with making any future distributions, the Liquidation Trustee may contribute all remaining Liquidation Trust Assets to a charitable organization that is exempt from federal income taxation pursuant to Section 501(c)(3) of the Internal Revenue Code and that is selected by the Liquidation Trustee and the Steering Committee, or, in the absence of agreement, the Liquidation Trustee with the approval of the Bankruptcy Court. The Liquidation Trustee will have no obligation to notify Beneficiaries if any quarterly distribution is postponed pursuant to clause (i) of the preceding sentence; however, the Liquidation Trustee will provide reasonable notice to the Beneficiaries (which may be by publication only) if distributions will cease due to a contribution made pursuant to clause (ii) of such sentence. In addition, the Liquidation Trustee will not be required to distribute cash to the Holder of an Allowed Unsecured Claim if the total aggregate amount of cash to be distributed on account of such Claim is less than $5.00 in the aggregate. Any Holder of an Allowed Unsecured Claim on account of which the total amount of cash to be distributed is less than $5.00 in the

651.002-24270

aggregate will have its claim for such distribution deemed satisfied, waived and released and will be forever barred from asserting any such Claim against the Debtor, the Liquidation Trustee or the property of any of them, including the Trust Accounts. Any cash not distributed with respect to Allowed Unsecured Claims as a result of this Article will be retained in the Unsecured Claims Trust Account, as applicable, for redistribution to other Holders of Allowed Unsecured Claims entitled to distributions from such account.

7.11.6 **Professional Fees and Expenses**. Subject to further order of the Bankruptcy Court, all applications for payment of fees and expenses pursuant to section 503(b) of the Bankruptcy Code shall be filed with the Bankruptcy Court within twenty (20) Business Days after the Effective Date. Any requests for payment of such fees and expenses not filed within such time period shall be discharged and forever barred except as otherwise may be ordered by the Bankruptcy Court.

7.11.7 **Medium for Payments**. Payments to be made by the Debtor or the Liquidation Trustee pursuant to the Plan will be made by check drawn on a domestic bank.

7.12 *REPORTS TO BE FILED BY THE LIQUIDATION TRUST*. The Liquidation Trustee, on behalf of the Liquidation Trust, will file with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to the Liquidation Trust Agreement) quarterly and annual reports regarding the administration of property subject to its ownership and control pursuant to the Plan, distributions made by it and other matters relating to the implementation of the Plan. The Liquidation Trustee will furnish or otherwise make available to any Holder or then-current Beneficiary, upon written request, a copy of any report prepared pursuant to Article 10.2 of the Liquidation Trust Agreement.

7.13 *COLLECTION OF BANKRUPTCY CLAIMS AND HANDLING OF DISPUTED CLAIMS*. The Liquidation Trustee, in consultation with the Steering Committee, shall have the sole authority and discretion to (a) dispute any Claims filed in the Bankruptcy Case, (b) make distributions to Holders of Allowed Claims from the Liquidation Trust Assets as provided under the Plan, and (c) evaluate, pursue, collect or compromise any or all Bankruptcy Claims, including the prosecution of litigation with respect to Claims disputes or in connection with the collection of Bankruptcy Claims in its sole discretion and using its best business judgment and without further Bankruptcy Court approval. The Liquidation Trustee may, but shall not be required to, obtain Bankruptcy Court approval of any compromises or settlements of Bankruptcy Claims or Disputed Claims, *except* that the Liquidation Trustee may not, without the approval of the Bankruptcy Court, compromise or settle any Bankruptcy Claim or Disputed Claim where the amount of such Bankruptcy Claim or Disputed Claim exceeds $500,000, unless either (i) the Liquidation Trustee shall not have received a written objection from the Steering Committee within ten (10) days after notice of the terms of the compromise or settlement shall have been given to the Steering Committee or (ii) the compromise or settlement shall have been approved, after notice and a hearing, by the Bankruptcy Court.

7.14 *ENGAGEMENT OF PROFESSIONALS*. The Liquidation Trustee may retain such law firms, accounting firms, experts, advisors, agents, consultants, investigators, appraisers, auctioneers, or other professionals as it may deem necessary or desirable to aid it in the performance of its responsibilities pursuant to the terms of the Plan and the Liquidation Trust

21

Agreement. The Liquidation Trustee may, after the expiration of ten (10) days after the receipt by the Liquidation Trustee and the Steering Committee of an itemized statement therefor, pay any such professionals reasonable compensation for services rendered and expenses incurred on its behalf, without any necessity for Bankruptcy Court approval of such compensation and expenses, unless the Liquidation Trustee shall have received from the Steering Committee, before the expiration of said ten (10) day period, a written objection to the charges set forth on said itemized statement, or any items thereof. In the event that the Liquidation Trustee receives a written objection to the reasonableness of the charges of any such professional within the time period set forth herein, the Liquidation Trustee may (a) without any necessity for Bankruptcy Court approval, pay to such professional any such charges as to which no objection has been made or as to which the Liquidation Trustee, the Steering Committee and such professional shall reach agreement or as to which the Steering Committee shall withdraw its objection, (b) if the Steering Committee shall, within thirty (30) after its receipt of the itemized statement therefor, seek a determination by the Bankruptcy Court of the reasonableness of such charges, pay such amount as shall be determined by the Bankruptcy Court to be reasonable, and (c) if the Steering Committee shall not, within thirty (30) after its receipt of the itemized statement therefor, seek a determination by the Bankruptcy Court of the reasonableness of such charges, pay such charges without any necessity for Bankruptcy Court approval. Persons who served as professionals to the Debtor prior to the Effective Date may, if so designated by the Liquidation Trustee, serve as counsel to the Liquidation after the Effective Date.

7.15 *RECOURSE SOLELY TO LIQUIDATION TRUST.* All Claims against the Debtor and the Estate are deemed fully satisfied, waived and released in exchange for the treatment of such Claims under the Plan, and Holders of Allowed Claims will have recourse solely to the Liquidation Trust for payment of their Allowed Claims in accordance with the terms of the Plan.

7.16 *EXCLUSIVE BENEFIT OF TRUST ASSETS.* All Cash and other property held by the Liquidation Trustee in the Liquidation Trust, the Trust Accounts or otherwise for distribution to Creditors shall be held by it for the exclusive benefit of the Holders of each applicable Class of Allowed Claims (and to satisfy expenses and fees pursuant to the Plan), and shall not be subject to any claim by any Person except as provided under the Plan.

7.17 *SPECIAL PROVISIONS FOR TICKETHOLDER CLAIMS.*

7.17.1 **Allowed Claims.** For each Allowed Ticketholder Claim, on or before the Effective Date, Skybus will have either (a) in accordance with the terms of the Card Processing Agreement applicable to the Card used by the Holder of the Claim for the purchase of the ticket on account of which his Claim arose, validated the claim for refund in the Allowed amount of his Claim made by the Holder against the issuer of the Card submitted to Skybus by the Card Processor under the Card Processing Agreement, or (b) deposited in the Priority Claims Trust Account, for distribution to the Holder of the Claim, an amount equal to the Allowed amount of the Claim.

7.17.2 **Disputed Claims.** For each Disputed Ticketholder Claim, Skybus will on the Effective Date deposit in the applicable Disputed Claims Reserve an amount sufficient to pay

651.002-24270

the Holder of the Claim the amount the Holder of the Claim would be entitled to receive if the Claim were an Allowed Claim in its Face Amount.

7.17.3 **Discharge of Claims.** Compliance by Skybus with the provisions of this *Section 7.17* and the other provisions of the Plan applicable to any Ticketholder Claim shall constitute full performance of the Debtor's obligations to the Holder of such Claim, and upon such compliance Skybus's obligation to the Holder on account of its Claim shall be discharged, unless, in the case of Skybus's validation of the Holder's claim for refund as set forth in this *Section 7.17*, the Holder fails to receive credit to his Card account or payment in Cash on account of the claim for refund. The deposit by Skybus, pursuant to *Section 7.17.1*, in the Priority Claims Trust Account, for distribution to the Holder of a Ticketholder Claim, of an amount equal to the Allowed amount of the Claim, or the deposit by Skybus, pursuant to *Section 7.17.2*, in the applicable Disputed Claims Reserve, of an amount sufficient to pay the Holder of a Ticketholder Claim the amount the Holder of the Claim would be entitled to receive if the Claim were an Allowed Claim in its Face Amount, shall, in addition, constitute a release and discharge of the Holder's claim, if any, against the issuer of the Card used by the Holder of the Claim arising from the purchase of the ticket on account of which his Claim arose.

7.18    *STEERING COMMITTEE.*

7.18.1 **Establishment of the Steering Committee.**

(a)    *Dissolution of the Committee.*    On the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals and agents shall be released from any and all further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to obligations arising under confidentiality agreements entered into during the pendency of the Chapter 11 Case, which shall remain in full force and effect in accordance with the terms thereof. Professionals retained by the Committee and the members thereof shall not be entitled to compensation for services rendered or reimbursement of expenses incurred after the Effective Date in connection with the Chapter 11 Case, except for services rendered and expenses incurred in connection with any applications for allowance of compensation for services rendered or reimbursement of expenses incurred on or before the Effective Date.

(b)    *Functions of Steering Committee.*    On the Effective Date, the Steering Committee shall be established and, until dissolved in accordance with the terms of this *Section 7.18*, shall carry out the duties, responsibilities and functions provided for herein and in the Liquidation Trust Agreement.

(c)    *Governance of Steering Committee.* The Bylaws of the Committee in effect on the Effective Date shall govern the proceedings of the Steering Committee after the Effective Date, subject to amendment in the sole discretion of the Steering Committee.

(d)    *Reimbursement of Members.* Members of the Steering Committee shall be reimbursed from the Liquidation Trust for their reasonable and necessary out-of-pocket expenses incurred in performing their duties as such. The Liquidation Trustee shall, after the

651.002-24270

expiration of ten (10) days after the receipt by the Liquidation Trustee of an itemized statement therefor and compliance with such procedures as the Steering Committee shall establish for presentation and review of invoices and supporting documentation, reimburse any member of the Steering Committee for such expenses, without any necessity for Bankruptcy Court approval of such expenses, unless such member shall have received from the Liquidation Trustee or the Steering Committee, before the expiration of said ten (10) day period, a written objection to the charges set forth on said itemized statement, or any items thereof. In the event that a member of the Steering Committee receives a written objection to the reasonableness of his charges within the time period set forth herein, the Liquidation Trustee shall (a) without any necessity for Bankruptcy Court approval, pay to such member any such charges as to which no objection has been made or as to which the Liquidation Trustee, the Steering Committee and such member shall reach agreement or as to which the objecting party shall withdraw its objection, (b) if the Steering Committee or the Liquidation Trustee shall, within thirty (30) after its receipt of the itemized statement therefor, seek a determination by the Bankruptcy Court of the reasonableness of such charges, pay such amount as shall be determined by the Bankruptcy Court to be reasonable, and (c) if neither the Steering Committee nor the Liquidation Trustee shall, within thirty (30) after its receipt of the itemized statement therefor, seek a determination by the Bankruptcy Court of the reasonableness of such charges, pay such charges without any necessity for Bankruptcy Court approval.

(e) *Retention of Professionals.* The Steering Committee may retain such attorneys (including special counsel), accountants and other professionals as it shall consider advisable. The Liquidation Trustee shall, after the expiration of ten (10) days after the receipt by the Liquidation Trustee and the Steering Committee of an itemized statement therefor, pay any such professionals reasonable compensation for services rendered and expenses incurred on its behalf and approved by the Steering Committee, without any necessity for Bankruptcy Court approval of such compensation and expenses, unless the Steering Committee shall have received from the Liquidation Trustee, before the expiration of said ten (10) day period, a written objection to the charges set forth on said itemized statement, or any items thereof. In the event that the Steering Committee receives a written objection to the reasonableness of the charges of any such professional within the time period set forth herein, the Liquidation Trustee may (a) without any necessity for Bankruptcy Court approval, pay to such professional any such charges as to which no objection has been made or as to which the Liquidation Trustee, the Steering Committee and such professional shall reach agreement or as to which the Liquidation Trustee shall withdraw its objection, (b) if the Liquidation Trustee shall, within thirty (30) days after its receipt of the itemized statement therefor, seek a determination by the Bankruptcy Court of the reasonableness of such charges, pay such amount as shall be determined by the Bankruptcy Court to be reasonable, and (c) if the Liquidation Trustee shall not, within thirty (30) days after its receipt of the itemized statement therefor, seek a determination by the Bankruptcy Court of the reasonableness of such charges, pay such charges without any necessity for Bankruptcy Court approval. Persons who served as professionals to the Committee prior to the Effective Date may, if so designated by the Steering Committee, serve as counsel to the Steering Committee after the Effective Date.

651.002-24270

(f) *Replacing Members.* In the event of the death, dissolution or resignation of a member of the Steering Committee, the remaining members may, but need not, designate a successor from among the Holders of Class 5 Claims.

(g) *Release or Assignment of Class 5 Claims.* In the event a Creditor whose representative serves on the Steering Committee should assign its Class 5 Claims or release the Estate from further distributions on such Class 5 Claims, such assignment or release shall constitute the resignation of such Creditor or its representative as a member of the Steering Committee.

(h) *Exculpation.* Neither the Steering Committee nor any of its members shall in any way be liable for any acts of the Steering Committee or for the acts of any of its members, employees or agents, except for acts undertaken by such members in bad faith or constituting gross negligence or willful misconduct in the performance of their duties as members of the Steering Committee:

(i) *Dissolution.* The Steering Committee shall be dissolved when the Bankruptcy Court enters the final decree closing the Chapter 11 Case or should it cease to have any members.

7.18.2 **Role of the Steering Committee.** On and after the Effective Date, the Steering Committee shall consult with the Liquidation Trustee with respect to (a) objections to Claims and resolution of Disputed Claims; (b) prosecution and settlement of Bankruptcy Claims; (c) making of distributions to the Holders of Allowed Claims and the payment of Professional Claims; and (d) other issues related to the administration or implementation of the Plan. The Liquidation Trustee shall not be bound to accept the recommendation of the Steering Committee with respect to any matter. However, the Steering Committee shall have the right to appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to the Plan, the Liquidation Trust Agreement, the Liquidation Trust, the Liquidation Trust Assets or the Debtor, shall have the right to contest in the Bankruptcy Court any action proposed to be taken by the Liquidation Trustee if the Steering Committee in its reasonable judgment believes that such action is contrary to the terms of the Liquidation Trust Agreement or is not in the best interests of the Estate and the Beneficiaries of the Liquidation Trust, and, within the time periods specified herein or in any order of the Bankruptcy Court, to object to any Claim.

7.19 *EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS; EXEMPTION FROM CERTAIN TRANSFER TAXES.* The Liquidation Trustee or its designee will be authorized to (a) execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan and (b) certify or attest to any of the foregoing actions. Pursuant to § 1146(a) of the Bankruptcy Code, the following will not be subject to any stamp tax, real estate transfer tax, sales and use tax or similar tax: (i) dissolution of the Debtor; (ii) the execution and implementation of the Liquidation Trust Agreement, including any transfers to or by the Liquidation Trust; or (iii) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements

651.002-24270

or agreements of consolidation, disposition, liquidation or dissolution executed in connection with any transaction pursuant to the Plan.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

8.1 *BAR DATE FOR OBJECTIONS TO CLAIMS.* Unless another date is established by the Bankruptcy Court or in the case of any Claim or Claims such date is extended by the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served on the Holders of such Claims by the later of: (a) 180 days after the Effective Date and (b) 180 days after a particular proof of Claim has been filed. If an objection has not been filed to a proof of Claim or a scheduled Claim by the objection bar dates established in this *Section 8.1*, the Claim to which the proof of Claim or scheduled Claim relates shall be treated as an Allowed Claim if such Claim has not been disallowed earlier.

8.2 *TREATMENT OF DISPUTED CLAIMS.*

8.2.1 **No Distribution on Disputed Claims.** No distribution or other payment or treatment shall be made on account of a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim. For purposes of receiving distributions pursuant to the Plan only, each Creditor that has filed with the Bankruptcy Court one or more proofs of Claim shall be deemed to hold one Claim, which Claim shall be deemed a Disputed Claim unless and until each account (as defined in section 9-102(a)(2) of the Uniform Commercial Code of New York) that is a portion of the Creditor's Claim becomes an Allowed Claim.

8.2.2 **Reserves Established in Lieu of Distributions for Disputed Claims.** On the Effective Date, in connection with the initial funding, pursuant to the provisions of *Sections 7.8.2* and *7.8.3*, of the Priority Claims Trust Account and the Unsecured Claims Trust Account, the Liquidation Trustee shall designate a portion of such initial funding as Disputed Claims Reserves in an amount sufficient to pay, in the case of the Priority Claims Trust Account, each Holder of a Disputed Administrative Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Convenience Claim, Disputed Secured Claim, and, to the extent provided by *Section 7.17.2*, Disputed Ticketholder Claim, the amount the Holder of such Disputed Claim would be entitled to receive if such Disputed Claim were an Allowed Claim in its Face Amount, and, in the case of the Unsecured Claims Trust Account, an amount sufficient to pay the Holder of such Disputed Claim the amount the Holder of such Disputed Claim would be entitled to receive if such Disputed Claim were an Allowed Claim in its Face Amount. In connection with any subsequent transfers of Cash to the Unsecured Claims Trust Account pursuant to *Sections 7.8.1(d)* or *7.8.2(d)*, the Liquidation Trustee will designate amounts so transferred to the Disputed Claims Reserves to satisfy the Disputed Class 5 Claims in accordance with the terms of the Plan should they subsequently be Allowed.

8.2.3 **Determination of "*Face Amount.*"**

651.002-24270

(a)     For the purposes of this *Article VIII*, the "*Face Amount*" of a Claim is (1) the amount set forth on the proof of claim filed with respect to the Claim, unless the Claim is filed in an unliquidated amount; (2) if a proof of claim has been filed in an unliquidated amount, an amount agreed to by the Holder of the applicable Disputed Claim and the Liquidation Trustee or, in the event an agreement is not reached, an amount determined by the Bankruptcy Court in accordance with *Section 8.2.3(b)*; or (3) if no proof of claim has been filed, the amount of the Claim listed in the Debtor's Schedules of Assets and Liabilities as not being disputed, contingent or unliquidated.

(b)     As to any Disputed Claim (including any disputed, contingent or unliquidated claim), the Bankruptcy Court shall, upon motion by the Holder of any Disputed Claim or the Liquidation Trustee, estimate the maximum allowable amount of such Disputed Claim under section 502(c) of the Bankruptcy Code. A Creditor whose Claim is estimated by the Bankruptcy Court shall not be entitled to any subsequent reconsideration or adjustment as a result of any subsequent adjudication or actual determination of the amount of the Claim, or otherwise, and the Creditor shall not have recourse to the Debtor, the Liquidation Trustee, the Steering Committee, any Assets, or the Liquidation Trust, in the event the actual amount of the Creditor's Claim is at any time later determined to exceed the estimated amount.

8.2.4   **Timing and Amounts of Distributions to Holders of Disputed Claims that Become Allowed Claims.**

(a)     *Timing of Distributions.* On the second Distribution Date, the Liquidation Trustee shall make the initial distribution to Holders of Disputed Claims whose claims were Allowed after the Effective Date and before said second Distribution Date. On each subsequent Distribution Date, the Liquidation Trustee shall make distributions to Holders of Disputed Claims whose Claims were Allowed on or after the immediately preceding Distribution Date and before such subsequent Distribution Date. All such distributions shall be calculated pursuant to the provisions set forth in this *Section 8.2.4*. Each such distribution shall also include, on the basis of the amount then being distributed, a Pro Rata share of dividends, interest and other earnings on the sums so distributed in the applicable Disputed Claims Reserve.

(b)     *Determination of Pro Rata Share.* Upon the resolution of any Disputed Claim, the Pro Rata Share, with respect to any Allowed Class 5 Claim, shall thereafter be determined based upon the aggregate dollar amount of all Allowed Class 5 Claims, including the Disputed Claim in the amount, if any, of the Disputed Claim which shall have been Allowed, and the aggregate Face Amounts of all other Disputed Class 5 Claims.

(c)     *Release of Over-reserved Funds.* Whenever from time to time all or any portion of a Disputed Claim becomes a Disallowed Claim, the consideration placed in a Disputed Claims Reserve on account of the Disputed Claim, to the extent disallowed, shall be transferred to the Unsecured Claims Trust Account for distribution to the Holders of Allowed Claims in accordance with the following: On each Distribution Date, each Holder of a previously allowed Claim shall receive an additional distribution from the Disputed Claims Reserve on account of such Claim in the amount, if any, equal to (i) the amount of consideration that such Holder would have been entitled to receive pursuant to paragraph (a) of this *Section 8.2.4* if such Claim had become an Allowed Claim during the calendar quarter ending

27

immediately before the Distribution Date minus (ii) the aggregate amount of consideration previously distributed to the Holder on account of such Claim. Each such distribution shall also include, on the basis of the amount then being distributed, a Pro Rata share of dividends, interest and other earnings on the sums so distributed in the applicable Disputed Claims Reserve.

(d) *Tax Requirements for Income Generated by Disputed Claims Reserves.* The Liquidation Trustee shall pay, or cause to be paid, out of the property held in the applicable Disputed Claims Reserves, any tax imposed by any governmental unit on the income generated by the funds held in the applicable Disputed Claims Reserve. The Liquidation Trustee shall also file, or cause to be filed, any tax or information returns related to the Disputed Claims Reserves that are required by any governmental unit.

## ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1 *GENERAL TREATMENT.* On the Confirmation Date, all executory contracts or unexpired leases that exist between the Debtor and any Person that have not been assumed or rejected by order of the Bankruptcy Court or which are not the subject of a motion to reject pending on the Confirmation Date will be deemed rejected in accordance with the provisions and requirements of section 365 of the Bankruptcy Code. Entry of the Confirmation Order by the Clerk of the Court shall constitute an order approving such rejections pursuant to section 365(a) of the Bankruptcy Code.

9.2 *BAR TO REJECTION DAMAGES.* All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Bankruptcy Court no later than the earlier of twenty-five (25) days after the Confirmation Date or the bar date therefor, if any, set forth in the Bankruptcy Court order approving the rejection. Any Claims not filed within such time will be forever barred from assertion against the Debtor, the Estate and its property, the Liquidation Trust, or the Disputed Claims Reserves. Unless otherwise ordered by the Bankruptcy Court, all such Claims arising from the rejection of executory contracts or unexpired leases will be, and will be treated as, Class 5 Claims.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1 *SCOPE OF JURISDICTION.* The Bankruptcy Court will retain and have exclusive jurisdiction on and after the Confirmation Date for the following purposes:

10.1.1 **Objections to Claims**. To hear and determine objections to Administrative Claims or Proofs of Claims whenever filed both before and after the Confirmation Date, including any objections to the classification of any Claim and to allow or disallow any Disputed Claim, in whole or in part;

651.002-24270

10.1.2 **Estimation of Claims**. To hear and determine any and all motions to estimate Claims regardless of whether the Claim is the subject of a pending objection, a pending appeal or otherwise;

10.1.3 **Assumption or Rejection of Executory Contracts**. To hear and determine any and all pending applications for the rejection or assumption of executory contracts or unexpired leases to which a Debtor is a party or with respect to which a Debtor may be liable and to hear and determine, and, if need be, to liquidate, any and all Claims arising therefrom;

10.1.4 **Implementation of the Plan**. To enforce the provisions of the Plan and to consider and enforce any proposed amendments thereto and to hear and determine all controversies, suits and disputes that may arise in connection with the interpretation, implementation or enforcement of the Plan, the Estate's obligations and releases under the Plan, and to determine such other matters as may be set forth in the Confirmation Order or as may arise in connection with the Plan or the Confirmation Order or their implementation;

10.1.5 **Aid Execution of the Plan**. To enter such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

10.1.6 **Determination of Proceedings**. To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date or commenced thereafter;

10.1.7 **Enforcement of Orders**. To enforce all orders, judgments, injunctions and rulings entered in connection with the Chapter 11 Case;

10.1.8 **Allowance of Fees and Expenses**. To determine any and all applications for allowance of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

10.1.9 **Recovery of Assets**. To hear and determine all proceedings to recover all Assets of the Debtor and property of the Estate, wherever located, including any Bankruptcy Claims and any other causes of action or rights to payment of Claims that belong to the Debtor that may be pending on the Confirmation Date or that may be instituted at any time by the Liquidation Trustee thereafter;

10.1.10 **Resolve Trust Disputes**. To hear and determine any disputes between the Liquidation Trustee and the Liquidation Trust or with respect to either of them;

10.1.11 **Resolve Tax Issues**. To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

10.1.12 **Other Matters**. To hear any other matter as to which jurisdiction is not inconsistent with the Bankruptcy Code; and

651.002-24270

10.1.13 **Closing the Case.** To enter a final decree or decrees closing the Chapter 11 Case.

10.2 *FAILURE OF THE BANKRUPTCY COURT TO EXERCISE JURISDICTION.* If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Case, this *Article X* shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XI

## CONDITIONS TO EFFECTIVE DATE

The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied:

11.1 *LIQUIDATION TRUST AGREEMENT.* The Liquidation Trust Agreement shall have been executed.

11.2 *TRUST ACCOUNTS.* The Trust Accounts shall have been established.

11.3 *CONFIRMATION ORDER.* The Confirmation Order in a form and substance satisfactory to the Proponent shall have been entered, shall be in full force and effect, and shall not have been stayed.

## ARTICLE XII

## EFFECTS OF CONFIRMATION AND EFFECTIVENESS OF THE PLAN

12.1 *BINDING EFFECT.* Except as otherwise expressly provided in the Plan, on and after the Effective Date, the terms of the Plan shall bind all Holders of Claims and Equity Interests, whether or not they accept the Plan.

12.2 *INJUNCTION.* Except as set forth herein, on and after the Confirmation Date, every Holder of a Claim or Equity Interest shall be precluded and permanently enjoined from asserting against the Debtor, the Committee, the Liquidation Trust, and the Liquidation Trustee, their respective officers, directors and members (past, present and future), professionals and agents of the Debtor, the Committee, the Liquidation Trust, and the Liquidation Trustee, or their respective assets or properties, any further claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

12.3 *BANKRUPTCY CLAIMS.* Any rights or causes of action accruing to the Debtor shall become Assets of the Liquidation Trust. The Liquidation Trustee may pursue those rights or causes of action as appropriate as set forth in *Section 7.13* in accordance with what is in the

651.002-24270

best interests, and for the benefit, of the Liquidation Trust and those Creditors and, if applicable, Holders of Equity Interests, that will receive distributions on or subsequent to the Effective Date.

12.4 *LATE FILED CLAIMS.* No Claim shall be allowed if filed untimely after the Confirmation Date. There shall be an irrebuttable presumption that excusable neglect does not exist in respect of any such Claims.

12.5 *RELEASE.* On the Effective Date, the Debtor and the Liquidation Trust hereby waive, release, and discharge all current and prior directors, officers and employees of the Debtor from any claim arising prior to the Confirmation Date that could be brought by the Debtor if such director, officer or employee is entitled to indemnification with respect to such claim under the Debtor's charters, bylaws or applicable law or existing contract, except for such claims, if any, as shall have been reasonably identified by the Committee in a written notice delivered to the Debtor before the Confirmation Date (which identified claims, if any, shall, pursuant to *Section 12.3*, be considered Assets of the Liquidation Trust). Such waiver, release, and discharge shall also act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any such waived, released, and discharged claim.

12.6 *EXCULPATION.* Except for the distributions provided for in *Article VII* or as otherwise provided for in the Plan, the Debtor, the Liquidation Trust, the Liquidation Trustee and the Committee and their respective members (past, present and future), officers, directors, trustees, employees, or agents (including any professionals retained by such persons), shall have no liability to each other or to any Holder of a Claim or Equity Interest for any act or omission in connection with, or arising out of, transactions, relationships or dealings relating to the settlement of Claims incorporated in the Estates or the Plan, the solicitation of votes for the confirmation of the Plan, the consummation of the Plan, the administration of the Plan or property to be distributed under the Plan, and any other matter pertaining to the Chapter 11 Case, except for an act or omission constituting intentional misconduct or gross negligence, and in all respects shall be, and shall have been, entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1 *BUSINESS DAYS.* Whenever any payment to be made or action to be taken under the Plan is due to be made or taken on a day other than a Business Day, such payment will instead be made (without interest for such delay) or action will instead be taken on the next Business Day.

13.2 *GOVERNING LAW.* Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or the Delaware General Corporation Law, the laws of the State of New York shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

651.002-24270

13.3   *BINDING EFFECT.*   The rights, duties and obligations of any Person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, such Person or entity and their respective successors and assigns.

13.4   *FILING OR EXECUTION OF ADDITIONAL DOCUMENTS.*   Except as otherwise provided in the Plan, on or before substantial consummation of the Plan, the Debtor or the Liquidation Trustee will file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.5   *PAYMENT OF STATUTORY FEES.*   All fees payable pursuant to section 1930 of title 28, United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing shall be paid on or before the Effective Date.

13.6   *MODIFICATION OF PLAN AND PLAN DOCUMENTS.*   The Proponent reserves the right, in accordance with the Bankruptcy Code, to amend or modify, in consultation with the Committee, the Plan and Plan Documents in any manner prior to the entry of the Confirmation Order. After entry of the Confirmation Order, the Proponent may, prior to the dissolution of the Committee, in consultation with the Committee, and thereafter, in consultation with the Steering Committee, (a) amend or modify the Plan and Plan Documents in accordance with, and to the extent permitted by, section 1127(b) of the Bankruptcy Code or (b) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

13.7   *NO WAIVER OF DISCHARGE.*   Except as otherwise expressly provided in the Plan, nothing in the Plan shall be deemed to waive, limit or restrict in any way the discharge granted upon the entry of the Confirmation Order pursuant to section 1141 of the Bankruptcy Code.

13.8   *CONSTRUCTION.*   The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

651.002-24270

13.9 *CAPTIONS*. The Section, Subsection and paragraph headings contained in the Plan are for convenience and reference purposes only and will not affect in any way the meaning or interpretation of the Plan.

Dated: Wilmington, Delaware
        January 30, 2009

Respectfully submitted,

**SKYBUS AIRLINES, INC.**

By: _____
Its: ___General Counsel___

OF COUNSEL:

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
LANDIS RATH & COBB LLP
919 Market Street, Suite 600
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

-and-

Ronald E. Barab
Brian P. Hall
Jessica A. Rissmiller
SMITH, GAMBRELL & RUSSELL, LLP
Promenade II, Suite 3100
1230 Peachtree Street N.E.
Atlanta, GA 30309
Telephone: (404) 815-3500
Facsimile: (404) 815-3509

*Counsel to the Debtor and Debtor in Possession*

CORP\1326286.15

**EXHIBIT 1.1.43 TO PLAN**

**LIQUIDATION TRUST AGREEMENT**

**Dated as of _____ ___, 2009**

BETWEEN

**SKYBUS AIRLINES, INC.**

and

[_____]

as LIQUIDATION TRUSTEE

EXHIBIT 1.1.43 TO PLAN

# TABLE OF CONTENTS

Page

**ARTICLE 1 DEFINITIONS AND INTERPRETATIONS**.................................................4

| | | |
|---|---|---|
| 1.1 | Definitions........................................................................ | 4 |
| 1.2 | Certain References............................................................ | 3 |
| 1.3 | Titles and Headings.......................................................... | 3 |
| 1.4 | Inconsistencies with the Plan........................................... | 3 |

**ARTICLE 2 ESTABLISHMENT OF THE LIQUIDATION TRUST**..........................3

| | | |
|---|---|---|
| 2.1 | Creation and Purposes of the Liquidation Trust. .............. | 3 |
| 2.2 | Identification of Beneficiaries........................................... | 4 |
| 2.3 | Transfer of Initial Liquidation Trust Assets...................... | 4 |
| 2.4 | Trust Name........................................................................ | 4 |

**ARTICLE 3 CREATION, FUNDING AND TAX TREATMENT OF TRUST ACCOUNTS**4

| | | |
|---|---|---|
| 3.1 | Creation of the Trust Accounts. ....................................... | 4 |
| 3.2 | Liquidation Trust Expenses Account. ............................... | 4 |
| 3.3 | Priority Claims Trust Account. ......................................... | 5 |
| 3.4 | Unsecured Claims Trust Accounts..................................... | 6 |
| 3.5 | Undeliverable Cash Trust Accounts. ................................. | 7 |
| 3.6 | Tax Treatment................................................................... | 8 |

**ARTICLE 4 ADMINISTRATION OF THE LIQUIDATION TRUST**.......................8

| | | |
|---|---|---|
| 4.1 | Rights, Powers and Privileges.......................................... | 8 |
| 4.2 | Limitation on Investigations. ........................................... | 10 |
| 4.3 | No Personal Liability. ....................................................... | 10 |
| 4.4 | Dissolution of the Debtor.................................................. | 10 |
| 4.5 | Agents and Professionals. ................................................. | 11 |
| 4.6 | Authentication of Documents ........................................... | 11 |
| 4.7 | Investment Guidelines...................................................... | 11 |
| 4.8 | Disputed Claims................................................................ | 12 |
| 4.9 | Trade or Business.............................................................. | 12 |
| 4.10 | Court Approval of Liquidation Trustee Actions. ............... | 12 |
| 4.11 | Steering Committee. ......................................................... | 13 |
| 4.12 | Standard of Care. .............................................................. | 15 |

**ARTICLE 5 DISTRIBUTIONS FROM THE LIQUIDATION TRUST**.....................15

| | | |
|---|---|---|
| 5.1 | Method of Distributions to Holders of Allowed Claims.... | 15 |
| 5.2 | Delivery of Distributions. ................................................. | 15 |
| 5.3 | Means of Cash Payments.................................................. | 16 |
| 5.4 | Timing and Calculation of Amounts to Be Distributed. .... | 17 |
| 5.5 | Compensation and Reimbursement for Services Related to Distributions........... | 18 |
| 5.6 | Payments Limited to Trust Accounts................................. | 19 |
| 5.7 | Insufficient Funds. ........................................................... | 19 |

EXHIBIT 1.1.43 TO PLAN

**ARTICLE 6 BENEFICIARIES**.................................................................................20

    6.1    Interest Beneficial Only. ...............................................................20
    6.2    Ownership of Beneficial Interests Hereunder..................................20
    6.3    Rights to Distributions. ................................................................20
    6.4    Notice of Transfer of Beneficial Interest. .....................................21
    6.5    Exemption From Registration........................................................21
    6.6    Standing of Beneficiary. ...............................................................21

**ARTICLE 7 CERTAIN RIGHTS OF THE LIQUIDATION TRUSTEE**..............21

    7.1    Bankruptcy Claims........................................................................21
    7.2    Objections to Claims.....................................................................21
    7.3    Establishment of Litigation Trusts.................................................22

**ARTICLE 8 THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY** ........22

    8.1    Parties Dealing With the Liquidation Trustee. ...............................22
    8.2    Limitation of Liability....................................................................22
    8.3    No Liability for Acts of Predecessor. ............................................23
    8.4    No Implied Obligations..................................................................23
    8.5    Reliance by Liquidation Trustee on Documents or Advice of Counsel or Other Persons. .....................................................................................23
    8.6    No Personal Obligation for Skybus's Liabilities. ............................23
    8.7    Indemnification. ...........................................................................24

**ARTICLE 9 SELECTION, REMOVAL AND COMPENSATION OF THE LIQUIDATION TRUSTEE**..............................................................24

    9.1    Initial Liquidation Trustee. ...........................................................24
    9.2    Term of Service.............................................................................24
    9.3    Removal of the Liquidation Trustee. .............................................24
    9.4    Resignation of the Liquidation Trustee..........................................25
    9.5    Appointment of Successor Liquidation Trustee. .............................25
    9.6    Powers and Duties of Successor Liquidation Trustee......................25
    9.7    Trust Continuance. .......................................................................25
    9.8    Compensation and Costs of Administration. ..................................25

**ARTICLE 10 MAINTENANCE OF RECORDS; REPORTING** ...........................26

    10.1    Books and Records. ......................................................................26
    10.2    Reports to be Filed with the Bankruptcy Court. .............................26
    10.3    Compliance with Federal Securities Laws......................................27
    10.4    Tax Returns and Payments............................................................27

**ARTICLE 11 DURATION OF THE LIQUIDATION TRUST** ...........................27

    11.1    Duration. .....................................................................................27
    11.2    Termination Upon Distribution of All Liquidation Trust Assets.........28
    11.3    Termination After Five Years.........................................................28
    11.4    Other Termination Procedures.......................................................28
    11.5    No Reversions...............................................................................29

EXHIBIT 1.1.43 TO PLAN

**ARTICLE 12 MISCELLANEOUS** ............................................................................................29

    12.1    Limitation on Transferability. ..........................................................................29

    12.2    Notices. .............................................................................................................29

    12.3    No Bond. ............................................................................................................30

    12.4    Governing Law; Submission to Jurisdiction; Service of Process. .................30

    12.5    Successors and Assigns. ....................................................................................30

    12.6    No Execution. ....................................................................................................31

    12.7    Amendment. ......................................................................................................31

    12.8    Severability. .....................................................................................................31

# LIQUIDATION TRUST AGREEMENT

This LIQUIDATION TRUST AGREEMENT (the "Agreement") dated as of _____, 2009, is made by SKYBUS AIRLINES, INC., a Delaware corporation ("Skybus" or "Debtor"), and _____ (or any successor trustee, the "Liquidation Trustee"), as Liquidation Trustee of the Liquidation Trust created hereunder pursuant to the terms of the Plan of Reorganization for Skybus confirmed by the Bankruptcy Court in the Chapter 11 Case (the "Plan").

WHEREAS the trust created hereby (the "Liquidation Trust") is created pursuant to, and to effectuate, *Article VII* of the Plan and constitutes the "Liquidation Trust" as contemplated by the Plan;

WHEREAS, pursuant to the Plan, the Liquidation Trust is established for the purpose of (i) liquidating the Liquidation Trust Assets, (ii) resolving certain Disputed Claims, (iii) making distributions to Holders of certain Allowed Claims in accordance with the terms of the Plan, and (iv) otherwise implementing the Plan and administering and winding up the Debtor's Estate and obtaining a Final Decree from the Bankruptcy Court, all as more specifically set forth in this Agreement and in accordance with the Plan; and

WHEREAS, the Liquidation Trust is intended to be treated, in part, as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d), for the benefit of Holders of Allowed Claims entitled to distributions, and will not conduct any trade or business;

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein, the Debtor and the Liquidation Trustee agree as follows:

## ARTICLE 1
## DEFINITIONS AND INTERPRETATIONS

1.1    <u>Definitions</u>.

Capitalized terms used but not defined in this Agreement have the meanings ascribed to them in the Plan. In addition to such terms defined in the Plan or defined above in the introductory paragraph or recitals above, the following capitalized terms used in this Agreement have the meanings ascribed to them in this Article 1.1:

**"Annual Receipts/Disbursements Report"** means an unaudited report filed with the Bankruptcy Court by the Liquidation Trustee, on behalf of the Liquidation Trust, within ninety (90) days after the end of each calendar year reflecting: (a) all Liquidation Trust Assets liquidated by the Liquidation Trust during such calendar year; (b) all Liquidation Trust Assets held by the Liquidation Trust at the end of such calendar year; and (c) all Liquidation Trust Assets disbursed during such calendar year, in each case itemized for the individual Trust Accounts and sub-accounts.

**EXHIBIT 1.1.43 TO PLAN**

**"Claims Agent"** means James Le, Kurtzman Carson Consultants, LLC, 2335 Alaska Avenue, El Segundo, Ca 90245 (Phone: 310-823-9000).

**"Claims Report"** means a report certified by the Claims Agent setting forth: (a) a listing, as of the Effective Date, of: (i) all Allowed Administrative Claims; (ii) all Allowed Priority Tax Claims; (iii) all Allowed Priority Claims; (iv) all Allowed Ticketholder Claims; (v) all Allowed Convenience Claims; (vi) all Allowed Secured Claims; (vii) all Allowed General Unsecured Claims; and (viii) all Disputed Claims; and (b) for each Claim so listed: (i) the name, address and federal taxpayer identification number or social security number (if known) of the Holder thereof as of the Distribution Record Date and (ii) the Face Amount thereof, including the amount of unpaid principal and accrued interest (if known).

**"Current Report"** means a report filed with the Bankruptcy Court by the Liquidation Trustee, on behalf of the Liquidation Trust, describing developments affecting the Liquidation Trust in any material respect (as determined by the Liquidation Trustee in its Permitted Discretion) in reasonable detail.

**"Distribution Record Date"** means the Effective Date.

**"Engagement Letter"** means that certain engagement letter, dated as of the Effective Date, 2009, by and between the Debtor and the Liquidation Trustee, the terms and conditions of which shall have been approved by the Bankruptcy Court by entry of the Confirmation Order or other order of the Bankruptcy Court.

**"Indemnified Parties"** means, collectively, Skybus, Liquidation Trustee, Disbursing Agent, the Committee, the Steering Committee, and any directors, officers, employees, agents, professionals, principals, members and other representatives thereof.

**"Pending Payments"** means assets transferred to the Liquidation Trust for distribution to the Holders of Allowed Claims and the Holders of Equity Interests entitled thereto pursuant to the provisions of the Plan.

**"Permitted Investments"** means the following investments so long as they have maturities of ninety (90) days or less: (i) obligations issued or guaranteed by the United States or by any Person controlled or supervised by or acting as an instrumentality of the United States pursuant to authority granted by the United States Congress; (ii) obligations issued or guaranteed by any state or political subdivision thereof rated either AA or higher, or MIG 1 or higher, by Moody's Investors Service, Inc. or its successor or AA or higher, or an equivalent, by Standard & Poor's Ratings Services or its successor; (iii) commercial or finance paper which is rated either P-1 or higher or an equivalent by Moody's Investors Service, Inc. or its successor or A-1 or higher or an equivalent by Standard & Poor's Ratings Services or its successor; (iv) certificates of deposit or time deposits of banks or trust companies, organized under the laws of the United States, having a minimum equity of $500,000,000; and (v) money market funds registered under the Investment Company Act of 1940, as amended, whose shares are registered under the Securities Act of 1933, as amended, which invests in securities of the type described in clause (i) above.

**EXHIBIT 1.1.43 TO PLAN**

**"Quarterly Receipts/Disbursements Report"** means an unaudited report filed with the Bankruptcy Court by the Liquidation Trustee, on behalf of the Liquidation Trust, within 45 days after the end of each of the first three calendar quarters of each calendar year reflecting: (a) all Liquidation Trust Assets received by the Liquidation Trust during such calendar quarter; (b) all Liquidation Trust Assets held by the Liquidation Trust at the end of such quarter; and (c) all Liquidation Trust Assets disbursed during such calendar quarter, in each case itemized for the individual Trust Accounts and sub-accounts.

**"Stipulation of Amount and Nature of Claim"** means a stipulation or other agreement between the Debtor or the Liquidation Trustee and a Holder of a Claim, or an agreed order of the Bankruptcy Court, establishing the amount and nature of a claim or interest.

1.2 Certain References.

Unless the context otherwise requires: (a) all references in this Agreement to Sections, Articles or Exhibits are to Sections, Articles or Exhibits of or to this Agreement; (b) words in the singular include the plural and vice versa; and (c) the verb "will" will have a mandatory connotation, indicating the parties' respective obligations hereunder. Whenever the words "include," "includes" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." All references to "$" or dollar amounts are to lawful currency of the United States.

1.3 Titles and Headings.

Titles and headings to Sections, Articles and Exhibits in or to this Agreement are inserted for convenience of reference only, and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

1.4 Inconsistencies with the Plan.

In the event of any inconsistency between any provision of this Agreement, on the one hand, and any provision of the Plan, on the other hand, the provisions of the Plan will govern and control.

**ARTICLE 2**
**ESTABLISHMENT OF THE LIQUIDATION TRUST**

2.1 Creation and Purposes of the Liquidation Trust.

The Debtor and the Liquidation Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code and applicable law, hereby create a trust, which is the "Liquidation Trust" contemplated by the Plan. The Liquidation Trust is established for the following purposes: (a) collecting, maintaining and administering any Liquidation Trust Assets for the benefit of the Beneficiaries; (b) liquidating and distributing (including objecting to Claims and determining the proper recipients and amounts of distributions to be made from the Liquidation Trust) the Liquidation Trust Assets for the benefit of the Beneficiaries who are determined to hold Allowed Claims as expeditiously as reasonably possible; (c) pursuing, prosecuting, settling or otherwise resolving any available Bankruptcy Claims; (d) closing the Chapter 11 Case, including seeking

**EXHIBIT 1.1.43 TO PLAN**

the entry of a Final Decree from the Bankruptcy Court; and (e) otherwise implementing the Plan, all in accordance with the Plan and this Agreement, and in furtherance thereof, the Liquidation Trustee will have the rights, power, privileges and obligations set forth in Article 4 and elsewhere in this Agreement and the Plan. The Liquidation Trust has no objective to, and will not, engage in the conduct of a trade or business and, subject to Article 11, will terminate upon the completion of its liquidation and distribution duties. The Liquidation Trust will be a "representative of the estate" under § 1123(b)(3)(B) of the Bankruptcy Code.

2.2     Identification of Beneficiaries.

On the Effective Date, the Claims Agent will deliver to the Liquidation Trustee the Claims Report with respect to the Estate.

2.3     Transfer of Initial Liquidation Trust Assets.

On the Effective Date, the Debtor will absolutely and irrevocably transfer, convey, assign and set over to the Liquidation Trust the Liquidation Trust Assets, whereupon title to such Liquidation Trust Assets will irrevocably vest in the Liquidation Trust, free and clear of Claims, Liens and Interests, to be managed by the Liquidation Trustee in accordance with the terms of this Agreement, the Plan and Confirmation Order for the sole purpose of consummating and carrying out the terms of the Plan. This Agreement and the Liquidation Trust created hereunder are hereby declared to be irrevocable, and the Debtor shall not have any right at any time to withdraw any of the property held hereunder or to revoke, annul, or cancel the Liquidation Trust created hereunder in whole or in part, or to alter, amend, or modify the Liquidation Trust in any respect.

2.4     Trust Name.

The trust created hereby shall be known as the **Skybus Creditor Trust,** in which name the Liquidation Trustee may, among other things, conduct the business of the Liquidation Trust, make and execute contracts on behalf of the Liquidation Trust, sue and be sued on behalf of the Liquidation Trust, and take such other actions as the Liquidation Trustee is authorized hereunder to take.

**ARTICLE 3**
**CREATION, FUNDING AND TAX TREATMENT OF TRUST ACCOUNTS**

3.1     Creation of the Trust Accounts.

On or prior to the Effective Date, the Liquidation Trustee will establish in its own name with federally insured United States banks each of the Trust Accounts.

3.2     Liquidation Trust Expenses Account.

(a)     Initial Funding. On the Effective Date, following the transfer of Liquidation Trust Assets to the Liquidation Trust pursuant to Article 2.3 hereof, the Liquidation Trustee will fund the Liquidation Trust Expenses Account with $_____ in cash from the Liquidation Trust Assets.

**EXHIBIT 1.1.43 TO PLAN**

(b)     Use of Funds. Except as otherwise ordered by the Bankruptcy Court, the Liquidation Trustee, in its capacity as Disbursing Agent, will pay Liquidation Trust Expenses from the Liquidation Trust Expenses Account, without the need for further Bankruptcy Court approval. Cash in the Liquidation Trust Expenses Account will also be used to pay taxes owing in respect of any amounts included in the Liquidation Trust Expenses Account in accordance with the provisions of the Plan.

(c)     Subsequent Funding. If, at any time after the initial funding of the Liquidation Trust Expenses Account as contemplated by Article 3.2(a), the Liquidation Trustee determines, in its Permitted Discretion, that the cash balance of the Liquidation Trust Expenses Account will be insufficient to make all payments payable therefrom in accordance with the terms of the Plan and this Agreement, the Liquidation Trustee may transfer from the Unsecured Claims Trust Account (to the extent cash remains available in such account) to the Liquidation Trust Expenses Account cash in an aggregate amount determined by the Liquidation Trustee, in consultation with the Steering Committee, to be necessary to ensure that the cash balance of the Liquidation Trust Expenses Account will be sufficient to make all such payments. To the fullest extent possible, any transfer pursuant to this Article 3.2(c) will be accomplished in a manner intended to avoid or minimize any adverse impact on the ability to make distributions of the full Allowed amounts of Unsecured Claims in accordance with the terms of the Plan.

(d)     Excess Funds. If, at any time after the initial funding of the Liquidation Trust Expenses Account pursuant to Article 3.2(a), the Liquidation Trustee determines that the cash balance of the Liquidation Trust Expenses Account is in excess of the amount that will be necessary to make all payments payable therefrom in accordance with the terms of the Plan and this Agreement, the Liquidation Trustee may transfer such excess to the Unsecured Claims Trust Account.

3.3     Priority Claims Trust Account.

(a)     Initial Funding. On the Effective Date, after the initial funding of the Liquidation Trust Expenses Account in accordance with Article 3.2(a), the Liquidation Trustee will fund the Priority Claims Trust Account with $_____ in cash from the Liquidation Trust Assets.

(b)     Use of Funds. Cash in the Priority Claims Trust Account will be used by the Liquidation Trustee only to (i) satisfy the Allowed amounts of Administrative Claims, Priority Tax Claims, Priority Claims, Convenience Claims and to the extent provided by Article 5.9, Ticketholder Claims, and (ii) pay taxes owing in respect of the earnings on any amounts included in the Priority Claims Trust Account and designated as a Disputed Claim Reserve.

(c)     Subsequent Funding. If, at any time after the initial funding of the Priority Claims Trust Account pursuant to Article 3.3(a), the Liquidation Trustee determines that the cash balance of the Priority Claims Trust Account is insufficient to make all payments payable therefrom in accordance with the terms of the Plan and this Agreement, the Liquidation Trustee will transfer from the Unsecured Claims Trust Account (to the extent cash remains available in such account) to the Priority Claims Trust Account cash in an amount determined by the Liquidation Trustee, in consultation with the Steering Committee, to be necessary to ensure that

**EXHIBIT 1.1.43 TO PLAN**

the cash balance of the Priority Claims Trust Account will be sufficient to make all such payments. To the fullest extent possible, any transfer pursuant to this Article 3.3(c) will be accomplished in a manner intended to avoid or minimize any adverse impact on the ability to make distributions of the full Allowed amounts of Unsecured Claims in accordance with the terms of the Plan.

(d)     Excess Funds. If, at any time after the initial funding of the Priority Claims Trust Account pursuant to Article 3.3(a), the Liquidation Trustee determines that the cash balance of the Priority Claims Trust Account is in excess of the amount that will be necessary to make all payments payable therefrom in accordance with the terms of the Plan and this Agreement, the Liquidation Trustee may transfer such excess cash to the Unsecured Claims Trust Account.

(e)     Disputed Claims Reserves. On the Effective Date, in connection with the initial funding of the Priority Claims Trust Account pursuant to Article 3.3(a), the Liquidation Trustee will designate a portion of such initial funding as a Disputed Claims Reserve in an amount sufficient to pay each Holder of a Disputed Administrative Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Convenience Claim, Disputed Secured Claim and to the extent provided by Section 7.17.2 of the Plan, Disputed Ticketholder Claim, against the Estate the amount such Holder would be entitled to receive if such Disputed Claim were an Allowed Claim in its Face Amount. To the extent any such Disputed Claims are not subsequently allowed, the Liquidation Trustee may transfer excess cash from the Disputed Claims Reserve to the Unsecured Claims Trust Account to satisfy Claims against the Estate that are allowed in accordance with the terms of the Plan.

3.4     Unsecured Claims Trust Accounts.

(a)     Funding. On the Effective Date, after the initial funding of the Liquidation Trust Expenses Account in accordance with Article 3.2(a) and the initial funding of the Priority Claims Trust Account in accordance with Article 3.3(a), the Liquidation Trustee will fund the Unsecured Claims Trust Account with the remainder of the cash portion of the Liquidation Trust Assets, and from and after the Effective Date, and in addition to any funding that may result from the application of Article 3.2(c) or 3.3(c), the Liquidation Trustee will fund the Unsecured Claims Trust Account with the net cash proceeds from the liquidation of any Liquidation Trust Assets.

(b)     Use of Funds. Cash in the Unsecured Claims Trust Account will be used by the Liquidation Trustee only to (i) fund the Liquidation Trust Expenses Account, Priority Claims Trust Account, as contemplated by Article 3.2(c) and 3.3(c), respectively, (ii) satisfy Allowed General Unsecured Claims against the Estate in accordance with the terms of the Plan, (iii) make distributions to Holders of Equity Interests consisting of Preferred Stock pursuant to the provisions of Article 5.8, (iv) pay taxes owing in respect of the earnings on any amounts included in the Unsecured Claims Trust Account and designated as a Disputed Claim Reserve in accordance with the provisions of the Plan.

(c)     Disputed Claims Reserves.

**EXHIBIT 1.1.43 TO PLAN**

(i) Initial Funding; Subsequent Funding From Other Trust Accounts. In connection with the initial funding of the Unsecured Claims Trust Account pursuant to Article 3.4(a), the Liquidation Trustee will designate a portion of such initial funding as a General Disputed Claims Reserve in an amount sufficient to pay each Holder of a Disputed Unsecured Claim against the Estate the amount such Holder would be entitled to receive if such Disputed Claim were an Allowed Claim in its Face Amount. To the extent any such Disputed Claims are not subsequently Allowed, in whole or in part, the funds allocated to the disallowed portion of such Claim shall be used to satisfy Claims against the Estate that are Allowed in accordance with the terms of the Plan. In connection with any subsequent transfers of cash to the Unsecured Claims Trust Account pursuant to Article 3.2(d) or 3.3(d), the Liquidation Trustee will, in its Permitted Discretion, designate amounts so transferred to the Disputed Claims Reserve to satisfy the Disputed General Unsecured Claims against the Estate in accordance with the terms of the Plan, if, as and when they are Allowed or, to the extent such Disputed Claims are not Allowed, to satisfy Claims against the Estate that are Allowed in accordance with the terms of the Plan.

(ii) Deposit of New Cash Following the Effective Date. Any cash that becomes available to the Liquidation Trust following the Effective Date, including as a result of the receipt of any income or interest generated by the investment of cash held in the Unsecured Claims Trust Account, will be deposited in the Unsecured Claims Trust Account.

3.5     Undeliverable Cash Trust Accounts.

After the Effective Date, if any distribution to a Holder of an Allowed Claim against the Estate is returned to the Liquidation Trustee as undeliverable, the Liquidation Trustee will deposit the undeliverable cash in the Undeliverable Cash Trust Account. The Liquidation Trustee will hold such funds, in a book-entry sub-account in the Undeliverable Cash Trust Account, for the benefit of such Holder. Until such Holder notifies the Liquidation Trustee in writing of its then-current address, as contemplated by Article 5.2(b)(i), no attempt will be made to deliver subsequent distributions to such Holder, and any such distributions that such Holder would otherwise be entitled to receive will instead be transferred from the appropriate Trust Account to the Undeliverable Cash Trust Account and credited to such book-entry sub-account. All cash held in such book-entry sub-account for the benefit of such Holder will be invested by the Liquidation Trustee in a manner consistent with the investment and deposit guidelines set forth in this Agreement. Any income or interest generated from such investment activities will be held in such book-entry sub-account for the benefit of such Holder until such Holder notifies the Liquidation Trustee in writing of its then-current address as contemplated by Article 5.2(b)(i). Subject to Article 5.2, when such Holder notifies the Liquidation Trustee in writing of its then-current address as contemplated by Article 5.2(b)(i), the Liquidation Trustee will deliver to such Holder all cash contained in such book-entry sub-account (net of provision for taxes owing in respect of amounts included in such book-entry sub-account in accordance with the provisions of the Plan). In the event such Holder's right to assert a claim for undeliverable distributions is forfeited as contemplated by Article 5.2(b)(ii) or under the terms of the Plan, all cash contained in such book-entry sub-account will be transferred from the Undeliverable Cash Trust Account

EXHIBIT 1.1.43 TO PLAN

to the appropriate Trust Account for redistribution to Holders of Allowed Claims entitled to distributions therefrom.

3.6     Tax Treatment.

The Liquidation Trust (which consists of the various Trust Accounts) is intended to be treated for U.S. federal income tax purposes, in part, as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d), for the benefit of Holders of Allowed Claims and Equity Interests entitled to distribution of Pending Payments, and otherwise as one or more disputed ownership funds within the meaning of Treasury Regulations Section 1.468B-9(b)(1). The Liquidation Trustee will act as the "administrator," within the meaning of Treasury Regulations Section 1.468B-9(b)(2), of such funds. The Disputed Claims Reserves will be subject to the continuing jurisdiction of the Bankruptcy Court, and, as a result, no money or property can be paid or distributed from the Disputed Claims Reserves to, or on behalf of, a "claimant" or the "transferor" (as such terms are defined in Treasury Regulations Sections 1.468B-9(b)(3) and 1.468B-9(b)(7), respectively) except if, as and when such Claims become Allowed Claims (or Liquidation Trust Expenses) pursuant to the procedures for allowing Claims (or incurring and paying Liquidation Trust Expenses) and making distributions prescribed in the Plan.

For all U.S. federal income tax purposes, the Debtor, the Liquidation Trustee and the Beneficiaries will treat the transfer of Liquidation Trust Assets to the Liquidation Trust pursuant to Article 2.3 as: (a) to the extent of Pending Payments, a transfer of the Pending Payments directly from the Debtor to the Holders of such Allowed Claims followed by the transfer of such Pending Payments by the Holders of such Allowed Claims to the Liquidation Trust in exchange for the rights to distributions from the Liquidation Trust; and (b) to the extent of amounts that are not Pending Payments, as a transfer to one or more disputed ownership funds, as described in this Article 3.6. Accordingly, the Holders of Allowed Claims entitled to distribution of Pending Payments will be treated for federal income tax purposes as the grantors and deemed owners of their respective shares of the Liquidation Trust Assets in the amounts of the Pending Payments and any earnings thereon.

## ARTICLE 4
## ADMINISTRATION OF THE LIQUIDATION TRUST

4.1     Rights, Powers and Privileges.

The Liquidation Trustee will have the rights, powers and privileges to act on behalf of the Liquidation Trust expressly provided in the Plan and this Agreement and as provided by law in the event that the Plan or this Agreement does not reference any such right, power or privilege, and shall be a "representative of the estate" as that phrase is used in § 1123(b)(3)(B) of the Bankruptcy Code with respect to the rights and powers granted in this Agreement, in the Plan and in the Confirmation Order. Unless otherwise expressly limited or restricted by the Plan or this Agreement, so long as such actions are, in the Liquidation Trustee's Permitted Discretion, necessary to manage the affairs of the Liquidation Trust and safeguard the interest of the Beneficiaries, the Liquidation Trustee will have the right, power, privilege and obligation, to: effect all actions and execute all agreements, instruments and other documents necessary to

**EXHIBIT 1.1.43 TO PLAN**

implement the Plan; establish, maintain and administer the Trust Accounts and, if necessary, any additional trust accounts (including paying all Liquidation Trust Expenses using the Liquidation Trust Expenses Account), and determine the manner of ascertaining income and principal of the assets in the Liquidation Trust, and the apportioning income and principal among such assets; accept, preserve, receive, collect, manage, invest, supervise, prosecute, settle and protect the Liquidation Trust Assets (directly or through one or more third party Disbursing Agents), each in accordance with the Plan and this Agreement; sell, liquidate, transfer, distribute or otherwise dispose of the Liquidation Trust Assets (directly or through a third party Disbursing Agent) or any part thereof or any interest therein upon such terms as the Liquidation Trustee determines to be necessary, appropriate or desirable, pursuant to the procedures for allowing Claims and making distributions prescribed in the Plan, and otherwise consistent with the terms of the Plan; calculate and make distributions of the Liquidation Trust Assets to Beneficiaries pursuant to the procedures for allowing Claims and making distributions prescribed in the Plan; subject to Article 7.2, review, reconcile, compromise, settle, prosecute or object to Disputed Claims and resolve any such objections as set forth in the Plan and this Agreement; investigate, prosecute, pursue, settle or otherwise resolve Bankruptcy Claims as contemplated by Article 7.1, and raise defenses in connection with any actions or claims adverse to the Liquidation Trust and, in connection therewith, establish, maintain and administer any litigation or similar trusts and related accounts, in each case, as the Liquidation Trustee determines, in its Permitted Discretion, to be necessary, appropriate or desirable; retain and compensate, without further order of the Bankruptcy Court, the services of professionals or other Persons or entities (including professionals, Persons or entities already retained by the Estate) to represent, advise and assist the Liquidation Trustee in the fulfillment of its responsibilities in connection with the Plan and this Agreement, all as it determines, in its Permitted Discretion, to be necessary, appropriate or desirable, but subject to the provisions of Article 4.5; file appropriate tax returns and other reports on behalf of the Liquidation Trust and the Debtor and pay taxes or other obligations owed by the Liquidation Trust and the Debtor; enforce, waive, assign or release rights, powers, privileges and immunities of any kind of the Debtor, except to the extent expressly limited by, or otherwise contrary to its duties established by, the Plan or this Agreement, as the Liquidation Trustee determines, in its Permitted Discretion, to be necessary, appropriate or desirable; purchase insurance with such coverage and limits as it determines, in its Permitted Discretion, to be necessary, appropriate or desirable (including insurance covering the Indemnified Parties for liabilities incurred in connection with the performance of duties under the Plan and this Agreement); appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to the Plan, this Agreement, the Liquidation Trust, the Liquidation Trust Assets or the Debtor; sue, defend and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding relating to the Plan, this Agreement, the Liquidation Trust, the Liquidation Trust Assets or the Debtor and, in connection therewith, establish, maintain and administer any litigation or similar trusts and related accounts, in each case, as the Liquidation Trustee determines, in its Permitted Discretion, to be necessary, appropriate or desirable; take such actions as are necessary or appropriate to close the Chapter 11 Case, including seeking the entry of a Final Decree from the Bankruptcy Court; comply with the Plan and exercise its rights and fulfill its obligations thereunder, including (i) any undertaking to perform any obligation of the Liquidation Trustee and the Debtor provided for or required by the Plan, including production of documents and providing of testimony, with respect to any investigation, subpoena or inquiry into the Debtor or the Debtor's financial affairs, and (ii) the

**EXHIBIT 1.1.43 TO PLAN**

execution, delivery and performance of such other agreements and documents or the exercise of such other powers and duties as the Liquidation Trustee determines, in its Permitted Discretion, to be necessary, appropriate or desirable to accomplish and implement the purposes and provisions of the Liquidation Trust as set forth in the Plan and this Agreement; exercise such further powers as the Liquidation Trustee reasonably deems to be necessary and proper to implement the provisions of the Plan and this Agreement; and dissolve the Liquidation Trust in accordance with the terms of the Plan and this Agreement. Notwithstanding anything herein to the contrary, the Liquidation Trustee will consult with the Steering Committee in any of the above matters that could have a material impact on the administration of the Liquidation Trust or the ultimate distribution to the Beneficiaries.

4.2     Limitation on Investigations.

The Liquidation Trustee will have no obligation to investigate or to determine the existence of any Liquidation Trust Asset. If, however, the Liquidation Trustee becomes aware of a potential Bankruptcy Claim with apparent value to the Liquidation Trust, it will take such reasonable steps as it determines, in its Permitted Discretion, to be appropriate, and, in consultation with the Steering Committee, such other steps to investigate and pursue such Bankruptcy Claim. The Liquidation Trustee may reasonably rely upon any document or record that the Debtor delivers to it and will be protected in acting or refraining from acting on any such document based upon such reasonable reliance.

4.3     No Personal Liability.

None of the provisions in the Plan or this Agreement will be construed to require the Liquidation Trustee to expend or risk its own funds or otherwise incur personal liability in the performance of its duties or in the reasonable exercise of its rights, powers and privileges hereunder. Notwithstanding the foregoing, nothing in this Article 4.3 will relieve the Liquidation Trustee of any liability for any action or omission resulting from bad faith, fraud, willful misconduct, gross negligence or breach of contract.

4.4     Dissolution of the Debtor.

(a)     Corporate Existence.   On or promptly following the Effective Date, Skybus will enter into such transactions and take such actions as may be necessary or appropriate to dissolve or otherwise terminate its corporate existence as of the Effective Date.

(b)     Liquidation and Dissolution Transactions.   The actions to effect the liquidation of the Assets and the dissolution or termination of the existence of Skybus may include (a) the execution and delivery of appropriate agreements or other documents of transfer, disposition, liquidation or dissolution, containing, among other terms, terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law, (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any Asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan, (c) the filing of appropriate certificates or articles of dissolution or similar instruments with the applicable governmental authorities, and (d) the taking of all other actions that Skybus determines to be necessary or appropriate, including the making of filings or recordings that may

**EXHIBIT 1.1.43 TO PLAN**

be required by applicable law in connection with the liquidation of the Assets and the dissolution or termination of the corporate existence of Skybus.

### 4.5 Agents and Professionals.

The Liquidation Trustee may retain such law firms, accounting firms, experts, advisors, agents, consultants, investigators, appraisers, auctioneers, or other professionals as it may deem necessary or desirable to aid it in the performance of its responsibilities pursuant to the terms of the Plan and the Liquidation Trust Agreement. The Liquidation Trustee may, after the expiration of ten (10) days after the receipt by the Liquidation Trustee and the Steering Committee of an itemized statement therefor, pay any such professionals reasonable compensation for services rendered and expenses incurred on its behalf, without any necessity for Bankruptcy Court approval of such compensation and expenses, unless the Liquidation Trustee shall have received from the Steering Committee, before the expiration of said ten (10) day period, a written objection to the charges set forth on said itemized statement, or any items thereof. In the event that the Liquidation Trustee receives a written objection to the reasonableness of the charges of any such professional within the time period set forth herein, the Liquidation Trustee may (a) without any necessity for Bankruptcy Court approval, pay to such professional any such charges as to which no objection has been made or as to which the Liquidation Trustee, the Steering Committee and such professional shall reach agreement or as to which the Steering Committee shall withdraw its objection, (b) if the Steering Committee shall, within thirty (30) after its receipt of the itemized statement therefor, seek a determination by the Bankruptcy Court of the reasonableness of such charges, pay such amount as shall be determined by the Bankruptcy Court to be reasonable, and (c) if the Steering Committee shall not, within thirty (30) after its receipt of the itemized statement therefor, seek a determination by the Bankruptcy Court of the reasonableness of such charges, pay such charges without any necessity for Bankruptcy Court approval. Persons who served as professionals to the Debtor prior to the Effective Date may, if so designated by the Liquidation Trustee, serve as counsel to the liquidation after the Effective Date.

### 4.6 Authentication of Documents

The Liquidation Trustee will not be responsible for the title, validity or genuineness of any property or evidence of title thereto received by it or delivered by it pursuant to this Agreement and will be held harmless and will be fully indemnified (pursuant to Article 8.7) by the Liquidation Trust in acting upon any document reasonably believed by it to be genuine and delivered by the proper party or parties.

### 4.7 Investment Guidelines.

The Liquidation Trustee will invest the Liquidation Trust Assets only in Permitted Investments; *provided*, however, that, notwithstanding anything to the contrary in this Agreement, the scope of any such Permitted Investments will be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulations Section 301.7701-4(d) and Internal Revenue Service Revenue Procedure 94-45 may be permitted to hold, pursuant to any amendment or addition to the Internal Revenue Code or to the Treasury Regulations, or any modification in Internal Revenue Service guidelines whether set forth in

**EXHIBIT 1.1.43 TO PLAN**

Internal Revenue Service rulings, other Internal Revenue Service pronouncements or otherwise. Such investments will mature in such amounts and at such times as, in the Permitted Discretion of the Liquidation Trustee at the times such investments are made, are necessary, appropriate or desirable, with a view to providing funds when needed to make payments from the Liquidation Trust Assets. Notwithstanding the foregoing, if the Liquidation Trustee determines, in its Permitted Discretion, that the administrative costs associated with such investment will exceed the return on such investment, it may direct that such cash not be invested. The Beneficiaries entitled to receive Pending Payments will be responsible for reporting their respective share of the income on investments of such amounts in the Trust Accounts and paying the applicable taxes thereon in accordance with Article 10.4(b). The Liquidation Trustee will be responsible for reporting all other income in each of the Trust Accounts and paying any applicable taxes thereon in accordance with Article 10.4(c). The Liquidation Trustee will be under no liability to accrue interest or produce income on any monies received by it hereunder and held for distribution or payment to the Beneficiaries, except as such interest is actually received by the Liquidation Trustee.

4.8     Disputed Claims.

Notwithstanding anything to the contrary in the Plan or this Agreement, no payments or distributions will be made on account of a Disputed Claim unless and until such Claim becomes an Allowed Claim. A Holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse only to the undistributed cash held in the Disputed Claims Reserves of the Trust Account (net of taxes on the earnings on any amounts designated as such Disputed Claims Reserves) for the satisfaction of such Allowed Claim and not to any other Trust Account or any assets previously distributed on account of any Allowed Claim.

4.9     Trade or Business.

The Liquidation Trustee will not at any time, on behalf of the Liquidation Trust or the Beneficiaries, operate as a business entity within the meaning of Treasury Regulations Section 301.7701-2, or engage in any trade or business as proscribed by Treasury Regulations Section 301.7701-4(d), and the Liquidation Trustee will not use or dispose of any part of the Liquidation Trust Assets in furtherance of any trade or business. Notwithstanding the foregoing, the Liquidation Trustee will not be prohibited from engaging in any trade or business for its own account, *provided* that such activity does not interfere or create a conflict with the Liquidation Trustee's administration of the Liquidation Trust.

4.10     Court Approval of Liquidation Trustee Actions.

(a)     Court Approval Generally Not Required. Except as otherwise provided in the Plan or this Agreement, the Liquidation Trustee will not be required to obtain the order or approval of the Bankruptcy Court or any other court of competent jurisdiction in, or account to the Bankruptcy Court or any other court of competent jurisdiction for, the exercise of any right, power or privilege conferred hereunder.

(b)     Right to Seek Court Approval. Notwithstanding the foregoing, where the Liquidation Trustee determines, in its Permitted Discretion, that it is necessary, appropriate or

**EXHIBIT 1.1.43 TO PLAN**

desirable, the Liquidation Trustee will have the right to submit to the Bankruptcy Court or any other court of competent jurisdiction any question or questions regarding any specific action proposed to be taken by the Liquidation Trustee with respect to the Plan, this Agreement, the Liquidation Trust, the Liquidation Trust Assets or the Debtor, including the administration and distribution of the Liquidation Trust Assets. Pursuant to the Plan, the Bankruptcy Court has retained jurisdiction to the fullest extent permitted for such purposes and may approve or disapprove any such proposed action upon motion by the Liquidation Trustee.

(c)     Court Direction Absent Express Procedures. For the avoidance of doubt, in the event that this Agreement does not expressly establish procedures governing the obligations of the Liquidation Trustee established by the Plan or this Agreement, the Liquidation Trustee will be entitled to seek and will take direction from the Bankruptcy Court or any other court of competent jurisdiction with respect to the fulfillment of such obligations, including management of the Liquidation Trust Assets, the creation of reserves, the distribution of Liquidation Trust Assets to satisfy Claims and Equity Interests and the recognition of Beneficiaries.

(d)     No Liability. The Liquidation Trustee will have no liability for taking any action approved by the Bankruptcy Court or any other court of competent jurisdiction or for otherwise complying with an order of the Bankruptcy Court or any other court of competent jurisdiction.

4.11     Steering Committee.

(a)     Establishment and Continued Existence.  The Steering Committee is to be established on the Effective Date in accordance with the Plan and will be initially composed of no more than five (5) Persons and no fewer than one (1) Person, each of which may, but need not, be a member of the Committee and each of which (a) shall be the Holder of a Class 5 Claim, (b) shall have been selected by the Committee on or before the Effective Date, and (c) shall be willing to fulfill for the benefit of Class 5 Creditors the specific duties and responsibilities of the Steering Committee as are set forth in the Plan and the Liquidation Trust Agreement.  Until dissolved in accordance with this Article 4.11, the Steering Committee shall exist and perform the functions provided for herein.

(b)     Role of Steering Committee. The Liquidation Trustee shall consult with the Steering Committee in connection with the Liquidation Trustee's determination with respect to the following: investment, management and supervision of the Liquidation Trust Assets; sale, liquidation, transfer, distribution or other disposition of the Liquidation Trust Assets; calculation and distribution of the Liquidation Trust Assets to Holders of Allowed Claims pursuant to the procedures for allowing Claims and making distributions prescribed in the Plan; review, reconciliation, compromise, settlement, prosecution or objection to Disputed Claims and resolution of any such objections; investigation and pursuit, prosecution, resolution and compromise of Bankruptcy Claims as contemplated by Article 7.2, and determination of defenses in connection with any actions or claims adverse to the Liquidation Trust and, in connection therewith, establishment, maintenance or administration of any litigation or similar trusts and related accounts; and enforcement, waiver, assignment or release of rights, powers, privileges and immunities of any kind of the Debtor.

**EXHIBIT 1.1.43 TO PLAN**

(c)     Retention of Professionals. The Steering Committee shall be entitled to retain and reasonably compensate, without further order of the Bankruptcy Court, the services of professionals or other Persons or entities (including professionals, Persons or entities already retained by the Estate) to represent, advise and assist the Steering Committee in the fulfillment of its responsibilities in connection with the Plan and this Agreement, all as it determines, in its Permitted Discretion, to be necessary, appropriate or desirable. The Liquidation Trustee shall, after the expiration of ten (10) days after the receipt by the Liquidation Trustee and the Steering Committee of an itemized statement therefor, pay any such professionals reasonable compensation for services rendered and expenses incurred on its behalf and approved by the Steering Committee, without any necessity for Bankruptcy Court approval of such compensation and expenses, unless the Steering Committee shall have received from the Liquidation Trustee, before the expiration of said ten (10) day period, a written objection to the charges set forth on said itemized statement, or any items thereof. In the event that the Steering Committee receives a written objection to the reasonableness of the charges of any such professional within the time period set forth herein, the Liquidation Trustee may (a) without any necessity for Bankruptcy Court approval, pay to such professional any such charges as to which no objection has been made or as to which the Liquidation Trustee, the Steering Committee and such professional shall reach agreement or as to which the Liquidation Trustee shall withdraw its objection, (b) if the Liquidation Trustee shall, within thirty (30) days after its receipt of the itemized statement therefor, seek a determination by the Bankruptcy Court of the reasonableness of such charges, pay such amount as shall be determined by the Bankruptcy Court to be reasonable, and (c) if the Liquidation Trustee shall not, within thirty (30) days after its receipt of the itemized statement therefor, seek a determination by the Bankruptcy Court of the reasonableness of such charges, pay such charges without any necessity for Bankruptcy Court approval. Persons who served as professionals to the Committee prior to the Effective Date may, if so designated by the Steering Committee, serve as counsel to the Steering Committee after the Effective Date.

(d)     Right to Appear and to Challenge. The Liquidation Trustee shall not be bound to accept the recommendation of the Steering Committee with respect to any matter. However, the Steering Committee shall have the right to appear and participate in any proceeding before the Bankruptcy Court with respect to any matter regarding or relating to the Plan, this Agreement, the Liquidation Trust, the Liquidation Trust Assets or the Debtor and shall have the right to challenge in the Bankruptcy Court any action proposed to be taken by the Liquidation Trustee to the extent that the Steering Committee in its reasonable judgment believes that such action is inconsistent with the terms of this Agreement or is not in the best interests of the Liquidation Trust.

(e)     Replacing Members. In the event of the death, dissolution or resignation of a member of the Steering Committee, the remaining members may, but need not, designate a successor from among the Holders of Class 5 Claims.

(f)     Release or Assignment of Class 5 Claim. In the event a Creditor whose representative serves on the Steering Committee should assign its Class 5 Claims or release the Estate from further distributions on such Class 5 Claims, such assignment or release shall constitute the resignation of such Creditor or its representative as a member of the Steering Committee.

EXHIBIT 1.1.43 TO PLAN

(g)     Dissolution.   The Steering Committee shall be dissolved when the Bankruptcy Court enters the final decree closing the Chapter 11 Case or should it cease to have any members.

4.12    Standard of Care.

The Liquidation Trustee and the Steering Committee shall exercise the rights and powers vested in them by this Agreement and the Plan and use reasonable business judgment in its exercise. Subject to applicable law, the Liquidation Trustee and the Steering Committee shall not be liable to any Beneficiary for any act they may do or omit to do as Liquidation Trustee while acting in good faith and in the exercise of its reasonable business judgment. The foregoing limitation on liability will apply equally to the agents, professionals, attorneys, and/or employees of the Liquidation Trustee and the Steering Committee acting on behalf of the Liquidation Trustee and the Steering Committee in the fulfillment of the Liquidation Trustee's duties hereunder.

# ARTICLE 5
# DISTRIBUTIONS FROM THE LIQUIDATION TRUST

5.1    Method of Distributions to Holders of Allowed Claims.

The Liquidation Trustee will make all distributions of cash and net proceeds of other Liquidation Trust Assets required under the Plan. The Liquidation Trustee will serve without bond and may employ or contract with other entities to assist in or make the distributions required by the Plan and this Agreement. Unless the context otherwise requires, all references to the Liquidation Trustee contained in this Article 5 will be deemed to be references to the Liquidation Trustee in its capacity as Disbursing Agent and, in the event it employs or contracts with one or more other entities to assist in or make the distributions required by the Plan and this Agreement as contemplated by the immediately preceding sentence, to any such third party Disbursing Agent in its capacity as such. Notwithstanding anything to the contrary in this Agreement, the Liquidation Trustee itself will act as the Disbursing Agent for the Liquidation Trust Expenses Account.

5.2    Delivery of Distributions.

(a)     Generally. Except as otherwise provided in the Plan, distributions in respect of Allowed Claims will be made to Holders of such Claims as of the Distribution Record Date at the addresses set forth in the applicable Claims Report. Prior to making any distribution to a Holder, the Liquidation Trustee may request written notification of the Holder's federal taxpayer identification number or social security number if the Liquidation Trustee determines, in its Permitted Discretion, that such information (i) is necessary to fulfill its tax reporting and withholding obligations and (ii) has not been provided in the applicable Claims Report or otherwise. The Liquidation Trustee, in its Permitted Discretion, may suspend distributions to any Holder that has not provided its federal taxpayer identification number or social security number, as the case may be, after a request is made pursuant to and in accordance with the terms of this Article 5.2. In addition to the foregoing, as a condition precedent to receiving any distribution on account of an Allowed Claim evidenced by any instruments or securities canceled pursuant to the

**EXHIBIT 1.1.43 TO PLAN**

Plan, the Holder of such Claim must tender, as specified in the Plan, the applicable instruments or securities evidencing such Claim to the Liquidation Trustee, together with any letter of transmittal required by the Liquidation Trustee. Pending any such surrender, any distributions on account of any such Claim will be treated as undeliverable and held in accordance with Article 5.2.

      (b)    Undeliverable Distributions.

          (i)    No Further Attempts At Delivery. If any distribution to a Holder of an Allowed Claim is returned to the Liquidation Trustee as undeliverable, then unless and until the Liquidation Trustee is notified in writing of such Holder's then-current address: (x) subject to this Article 5.2, such undeliverable distribution will remain in the possession of the Liquidation Trustee as provided in Article 3.5 and no further attempt will be made to deliver such distribution and (y) no attempt will be made to deliver subsequent distributions to such Holder and any such distributions that such Holder would otherwise be entitled to receive will instead be treated as provided in Article 3.5.

          (ii)    Forfeiture and Redistribution. Any Holder of an Allowed Claim that does not assert a claim for an undeliverable distribution by delivering to the Liquidation Trustee a written notice setting forth such Holder's then-current address within 180 days after the later of (x) the Effective Date and (y) the date an initial attempt shall have been made to make a distribution on account of such Claim will have its claim for undeliverable distributions discharged and will be forever barred from asserting such claim or any claim for subsequent distributions against the Debtor, the Liquidation Trustee or the property of any of them, including the Trust Accounts, whereupon all cash contained in the book-entry sub-account in the Undeliverable Cash Trust Account will be transferred to the Unsecured Claims Trust Account for redistribution to Holders of Allowed Claims entitled to distributions therefrom. For purposes of any such redistribution, each Allowed Claim in respect of which a claim for undeliverable distributions has been discharged as contemplated by this Article 5.2 will be deemed disallowed in its entirety.

          (iii)    No Requirement to Attempt to Locate Holders. Nothing contained in the Plan will require Skybus or the Liquidation Trustee to attempt to locate any Holder of an Allowed Claim.

5.3    <u>Means of Cash Payments</u>.

Except as otherwise provided in the Plan or this Agreement, cash payments made pursuant to the Plan will be in United States currency by checks drawn on the applicable Trust Accounts or, at the option of the Liquidation Trustee, by wire transfer from a domestic bank; *provided, however,* that cash payments to foreign Holders of Allowed Claims may be made, at the option of the Liquidation Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. If a cheek included in a distribution to a Holder of an allowed Unsecured Claim is not cashed within 180 days of the issuance thereof, the Liquidation Trustee will void such check and such distribution will be treated as undeliverable in accordance with Article 5.2.

**EXHIBIT 1.1.43 TO PLAN**

5.4    Timing and Calculation of Amounts to Be Distributed.

(a)    Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims and certain Ticketholder Claims.   On the initial Distribution Date, the Liquidation Trustee will make distributions to Holders of Administrative Claims, Priority Tax Claims, Priority Claims, Convenience Claims, Secured Claims and, to the extent provided by Article 5.9, Ticketholder Claims against the Estate that are allowed as of the Effective Date.   On or as promptly as practicable after each subsequent Distribution Date, the Liquidation Trustee will make distributions to Holders of Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Priority Claims, Disputed Secured Claims and, to the extent provided by Article 5.9, Disputed Ticketholder Claim, against the Estate that have become Allowed Claims during the immediately preceding calendar quarter.

(b)    On the initial Distribution Date, the Liquidation Trustee will make distributions to Holders of Class 5 Claims that are allowed as of the Effective Date in accordance with Article V of the Plan; provided that the amount of such distributions will be calculated as if each Disputed Class 5 Claim were an Allowed Claim in such class for its Face Amount under the Plan as of the Effective Date.   On or as promptly as practicable after each subsequent Distribution Date, the Liquidation Trustee will distribute to each Holder of a Disputed Class 5 Claim that has become an Allowed Claim during the immediately preceding calendar quarter a distribution from the Unsecured Claims Trust Account (net of provision for taxes payable in accordance with Article 10.4(c)) in an amount equal to: (i) the amount of cash that such Holder would have been entitled to receive pursuant to the Plan if such Claim and each other or Class 5 Claim prior to such Distribution Date had been an Allowed Claim as of the Effective Date (with such amount to be calculated in the manner provided in this Article 5.4), minus (ii) the aggregate amount of cash previously distributed on account of such Claim. In the event of the disallowance of a Disputed Class 5 Claim, any amounts held in respect thereof will be released from the Disputed Claims Reserves of the Unsecured Claims Trust Account for distribution as set forth in this Article 5.4.

(c)    Postponed and De Minimis Distributions. Notwithstanding anything to the contrary in this Agreement, if the Liquidation Trustee determines, with the consent of the Steering Committee, that the amount of any quarterly distribution is too small to justify the administrative costs associated with such distribution, the Liquidation Trustee may (i) postpone such quarterly distribution until the next quarterly Distribution Date, or (ii) if quarterly distributions have been previously postponed with respect to two or more quarterly Distribution Dates and the Liquidation Trustee determines, with the consent of the Steering Committee, that the amount of assets to be distributed will not increase to an amount that justifies the administrative costs associated with making any future distributions, the Liquidation Trustee may contribute all remaining Liquidation Trust Assets to a charitable organization that is exempt from federal income taxation pursuant to Section 501(c)(3) of the Internal Revenue Code and that is selected by the Liquidation Trustee and the Steering Committee, or, in the absence of agreement, the Liquidation Trustee with the approval of the Bankruptcy Court. The Liquidation Trustee will have no obligation to notify Beneficiaries if any quarterly distribution is postponed pursuant to clause (i) of the preceding sentence; however, the Liquidation Trustee will provide reasonable notice to the Beneficiaries (which may be by publication only) if distributions will cease due to a contribution made pursuant to clause (ii) of such sentence. In addition, the

**EXHIBIT 1.1.43 TO PLAN**

Liquidation Trustee will not be required to distribute cash to the Holder of an Allowed Unsecured Claim if the total aggregate amount of cash to be distributed on account of such Claim is less than $5.00 in the aggregate. Any Holder of an Allowed Unsecured Claim on account of which the total amount of cash to be distributed is less than $5.00 in the aggregate will have its claim for such distribution deemed satisfied, waived and released and will be forever barred from asserting any such Claim against the Debtor, the Liquidation Trustee or the property of any of them, including the Trust Accounts. Any cash not distributed with respect to Allowed Unsecured Claims as a result of this Article will be retained in the Unsecured Claims Trust Account, as applicable, for redistribution to other Holders of Allowed Unsecured Claims entitled to distributions from such account.

(d) Compliance with Tax Requirements. To the extent applicable, the Liquidation Trustee will comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan will be subject to such withholding and reporting requirements. The Liquidation Trustee will be authorized to take any actions that it determines, in its Permitted Discretion, to be necessary, appropriate or desirable to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan or this Agreement, each Person receiving a distribution of cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding and other tax obligations.

(e) Setoffs. Except with respect to Claims of the Debtor expressly released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Liquidation Trustee may, pursuant to § 553 of the Bankruptcy Code or applicable non-bankruptcy law, offset against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim) Bankruptcy Claims of any nature that Skybus may hold against the Holder of such Allowed Claim; *provided, however,* that neither the failure to effect a setoff nor the allowance of any Claim will constitute a waiver or release by Skybus of any Bankruptcy Claims that Skybus may possess against such a Claim Holder, which are preserved under the Plan.

5.5    Compensation and Reimbursement for Services Related to Distributions.

If the Liquidation Trustee, in consultation with the Steering Committee, employs or contracts with a third-party Disbursing Agent, such Disbursing Agent will receive, without the need for further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services. Such payments will be made on terms agreed to with Liquidation Trustee and will be paid to such Disbursing Agent from funds in the Liquidation Trust Expenses Account. To assist in making distributions under the Plan, notwithstanding any other provision of this Agreement, the applicable Trust Accounts (other than the Liquidation Trust Expenses Account) may be held in the name of one or more such Disbursing Agents. Any such Disbursing Agent will invest the cash in the Trust Accounts as directed by the Liquidation Trustee, who will direct such Disbursing Agent to invest such cash only in Permitted Investments; *provided,* however, that should the Liquidation Trustee determine, in its Permitted Discretion, that the administrative

**EXHIBIT 1.1.43 TO PLAN**

costs associated with such investment will exceed the return on such investment, it may direct such Disbursing Agent not to invest such cash.

5.6     Payments Limited to Trust Accounts.

All payments or other distributions to be made by the Liquidation Trustee in accordance with the Plan or this Agreement will be made only from the Trust Accounts.

5.7     Insufficient Funds.

Provided that the Liquidation Trustee has not acted in bad faith, engaged in fraud, willful misconduct or gross negligence or breached its fiduciary duties, if the Liquidation Trust Assets at any point prove insufficient to pay all Beneficiaries of the Priority Claims Trust Account in full or all Beneficiaries of the Unsecured Claims Trust Account in accordance with the terms of the Plan, the Liquidation Trustee will have no obligation to seek disgorgement from any Beneficiary, but may seek the guidance of the Bankruptcy Court or another court of competent jurisdiction consistent with Article 4.10.

5.8     Class 6 Interests.

(a)     In the event that each Holder of an Allowed Class 5 Claim shall receive distributions of Cash in accordance with the provisions of the Plan in the Allowed amount of his Claim, together with interest on the amount of each such distribution for the number of days between the Commencement Date and the date of its receipt of such distribution, calculated at the Treasury Rate, then the Liquidation Trustee shall make distributions to Holders of Equity Interests consisting of Preferred Stock in the aggregate amount of Available Cash from time to time held in the General Unsecured Claims Trust Account in accordance with the provisions of Section 5.1.7 of the Plan.

(b)     As a condition to receiving from the Disbursing Agent distributions provided for under the Plan in respect of Equity Interests consisting of Preferred Stock, any Holder thereof shall be required to surrender its certificate or certificates or other instruments representing such Equity Interests, accompanied by duly executed and completed letters of transmittal, to the Disbursing Agent. All such instruments shall be canceled. The Disbursing Agent shall make such distributions only Holders of such Equity Interests who have surrendered such instruments as herein provided. Except as otherwise provided in paragraph (c) below, no such distributions shall be made to any Holder of such Equity Interests who has not so surrendered such instruments.

(c)     Unless waived by the Disbursing Agent, any Holder of an Equity Interest consisting of Preferred Stock which is represented by a certificate which has been lost, stolen, mutilated or destroyed may, in lieu of surrendering such instrument as provided in paragraph (a) above, deliver to the Disbursing Agent (i) evidence satisfactory to the Disbursing Agent of the loss, theft, mutilation or destruction of such instrument and (ii) such security or indemnity as may be reasonably required by the Liquidation Trustee and, if different, the Disbursing Agent to hold the Liquidation Trustee and, if different, the Disbursing Agent harmless from any damages, liabilities or costs incurred in treating such Person as a Holder of such Equity Interest.

EXHIBIT 1.1.43 TO PLAN

Thereafter, such Person shall be treated as the Holder of such instrument for all purposes of the Plan and this Agreement and shall, for purposes of the Plan and this Agreement, be deemed to have surrendered the instrument representing such Equity Interest as provided in paragraph (a) above.

5.9     Special Provisions for Ticketholder Claims.

(a)     Allowed Claims. For each Allowed Ticketholder Claim, on or before the Effective Date, Skybus will have either (a) in accordance with the terms of the Card Processing Agreement applicable to the Card used by the Holder of the Claim for the purchase of the ticket on account of which his Claim arose, validated the claim for refund in the Allowed amount of his Claim made by the Holder against the issuer of the Card submitted to Skybus by the Card Processor under the Card Processing Agreement, or (b) deposited in the Priority Claims Trust Account, for distribution to the Holder of the Claim, an amount equal to the Allowed amount of the Claim.

(b)     Disputed Claims. For each Disputed Ticketholder Claim, Skybus will on the Effective Date deposit in the applicable Disputed Claims Reserve an amount sufficient to pay the Holder of the Claim the amount the Holder of the Claim would be entitled to receive if the Claim were an Allowed Claim in its Face Amount.

## ARTICLE 6
## BENEFICIARIES

6.1     Interest Beneficial Only.

The ownership of a beneficial interest in the Liquidation Trust shall not entitle any Beneficiary to any title in or to the Liquidation Trust Assets or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein.

6.2     Ownership of Beneficial Interests Hereunder.

Each Beneficiary shall own a beneficial interest in the Liquidation Trust Assets equal to the share of the net proceeds of such Liquidation Trust Assets to which such Beneficiary's Allowed Claim or allowed Equity Interest entitles such Beneficiary in accordance with the Plan.

6.3     Rights to Distributions.

The right to distributions from the Liquidation Trust will not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidation Trustee, and except that the rights of Holders of Class 6 Interests who are Beneficiaries to such distributions shall be evidenced by the certificates or certificates representing such Class 6 Interests. No Beneficiary holding a Claim will have any rights or interests in the Liquidation Trust Assets until such time as the Beneficiary's Claim becomes an Allowed Claim pursuant to the mechanism for determining Allowed Claims prescribed in the Plan. Except as expressly provided in Article 12.1, rights to distributions under this Agreement may not be assigned, alienated, pledged,

EXHIBIT 1.1.43 TO PLAN

encumbered or subjected to attachment, garnishment, levy, execution or other legal or equitable process.

6.4     Notice of Transfer of Beneficial Interest.

Any notice of a change of beneficial interest ownership as described in Article 12.1 of this Agreement shall be forwarded to the Liquidation Trustee by registered or certified mail, as set forth herein. The notice shall be executed by both the transferee and the transferor, and the signatures of the parties shall be acknowledged before a notary public. The notice must clearly describe the interest to be transferred. The Liquidation Trustee may rely upon such signatures and acknowledgments as evidence of such transfer without the requirement of any further investigation.

6.5     Exemption From Registration.

The parties hereto intend that the rights of the Beneficiaries arising under this Liquidation Trust will not be "securities" under applicable laws, but none of the parties hereto represent or warrant that such rights will not be securities or that their issuance under the Plan will be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the parties hereto intend for the exemptions from registration provided by § 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan.

6.6     Standing of Beneficiary.

No Beneficiary shall have standing to request that the Bankruptcy Court (a) remove the Liquidation Trustee or (b) direct the Liquidation Trustee to do or not to do any act other than as described herein.

## ARTICLE 7
## CERTAIN RIGHTS OF THE LIQUIDATION TRUSTEE

7.1     Bankruptcy Claims.

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, in accordance with § 1123(b) of the Bankruptcy Code, the Liquidation Trustee will retain and may enforce any Bankruptcy Claims that Skybus or the Estate may hold against any Person to the extent not expressly released under the Plan. Without intending to limit the generality of the foregoing, the Liquidation Trustee will retain the right to file, prosecute, pursue, settle or otherwise resolve any adversary proceedings available to Skybus.

7.2     Objections to Claims.

Subject to its Permitted Discretion, the Liquidation Trustee, on behalf of the Liquidation Trust, will have the authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims, including pursuant to any alternative dispute resolution or similar procedures approved by the Bankruptcy Court. The Liquidation Trustee may, but shall not be required to, obtain Bankruptcy Court approval of any compromises or settlements of Bankruptcy

**EXHIBIT 1.1.43 TO PLAN**

Claims or Disputed Claims, *except* that the Liquidation Trustee may not, without the approval of the Bankruptcy Court, compromise or settle any Bankruptcy Claim or Disputed Claim where the amount of such Bankruptcy Claim or Disputed Claim exceeds $500,000, unless the Liquidation Trustee shall not have received a written objection from the Steering Committee within ten (10) days after notice of the terms of the compromise or settlement shall have been given to the Steering Committee.

7.3    Establishment of Litigation Trusts.

The Liquidation Trustee, on behalf of the Liquidation Trust, will have the authority to establish, maintain and administer any litigation or similar trusts and related accounts, as the Liquidation Trustee determines, in its Permitted Discretion, to be necessary, appropriate or desirable in connection with prosecuting, filing, reconciling, settling, compromising, resolving, defending, objecting to or litigating to judgment any Claims or Bankruptcy Claims.

**ARTICLE 8**
**THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY**

8.1    Parties Dealing With the Liquidation Trustee.

In the absence of actual knowledge to the contrary, any Person dealing with the Liquidation Trust or the Liquidation Trustee will be entitled to rely on the authority of the Liquidation Trustee or any of its agents to act in connection with the Liquidation Trust Assets. There is no obligation on any Person dealing with the Liquidation Trustee to inquire into the validity or propriety of any transaction by the Liquidation Trustee or any agent of the Liquidation Trustee.

8.2    Limitation of Liability.

Notwithstanding anything to the contrary in this Agreement, in exercising the rights granted hereunder, the Liquidation Trustee will use the same degree of care and skill as an individual of ordinary prudence, discretion and judgment would exercise or use in its own affairs. The Liquidation Trustee will not be liable with respect to any action it takes or omits to take in good faith or with the consent of the Steering Committee. The Liquidation Trustee will not be liable for punitive, exemplary, consequential or special damages for a breach of this Agreement under any circumstances or for any other act or omission not constituting bad faith, fraud, willful misconduct or gross negligence. The Debtor, the Committee, the Steering Committee, the Liquidation Trust, the Liquidation Trustee and their respective directors, officers, employees, members, agents, professionals and other representatives, acting in such capacity, will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement, this Agreement or any contract, instrument, release or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or this Agreement; *provided,* that the foregoing provisions of this Article 8.2 will have no effect on (a) the liability of any Person that would otherwise result from the failure to perform or pay any obligation or liability under the Plan, this Agreement or any contract, instrument, release or other agreement or document to

EXHIBIT 1.1.43 TO PLAN

be entered into or delivered in connection with the Plan or (b) the liability of any such Person that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted bad faith, fraud, willful misconduct or gross negligence.

8.3     No Liability for Acts of Predecessor.

No successor Liquidation Trustee shall be in any way responsible for the acts or omissions of any Liquidation Trustee in office prior to the date on which such Person becomes a Liquidation Trustee, nor shall he be obligated to inquire into the validity or propriety of any such act or omission, unless such successor Liquidation Trustee expressly assumes such responsibility. Any successor Liquidation Trustee shall be entitled to accept as conclusive any final accounting and statement of the Liquidation Trust Assets furnished to such successor Liquidation Trustee by such predecessor Liquidation Trustee and shall further be responsible only for those Liquidation Trust Assets included in such statement.

8.4     No Implied Obligations.

Neither the Liquidation Trustee nor the Steering Committee shall be liable except for the performance of such duties and obligations as are specifically set forth herein, in the Plan or in the Confirmation Order, and no other or further covenants or obligations shall be implied by this Agreement. The Liquidation Trustee shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties herein or in any documents or instrument evidencing or otherwise constituting a part of the Liquidation Trust Assets. The Liquidation Trustee makes no representations as to the value of the Liquidation Trust Assets or any part thereof, nor as to the validity, execution, enforceability, legality, or sufficiency of this Agreement; and the Liquidation Trustee shall incur no liability or responsibility with respect to any such matters.

8.5     Reliance by Liquidation Trustee on Documents or Advice of Counsel or Other Persons.

Except as otherwise provided herein, the Liquidation Trustee and the Steering Committee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, and other paper or document reasonably believed to be genuine and to have been signed or presented by the proper party or parties, and shall have no liability or responsibility with respect to the form, execution, or validity thereof. None of the provisions hereof shall require the Liquidation Trustee to expend or risk his own funds or otherwise incur financial liability or expense in the performance of any duties hereunder.

8.6     No Personal Obligation for Skybus's Liabilities.

Beneficiaries and other Persons dealing with the Liquidation Trustee in his capacity as Liquidation Trustee within the scope of this Agreement shall look solely to the Liquidation Trust Assets to satisfy any liability incurred by the Liquidation Trustee to such Person in carrying out the terms of this Agreement, and the Liquidation Trustee shall have no personal or individual obligation to satisfy any such liability.

EXHIBIT 1.1.43 TO PLAN

8.7     Indemnification.

The Indemnified Parties will be indemnified by the Liquidation Trust from the Liquidation Trust Expenses Account (taking into account transfers of cash thereto as contemplated by Article 3.2(c) for any losses, claims, damages, liabilities or expenses, including reasonable attorneys' fees, disbursements and related expenses, that the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against one or more of the Indemnified Parties on account of any action or omission or breach of contract by the Liquidation Trustee, in its capacity as such,  or the Steering Committee, including actions or omissions with respect to the Disputed Claims); *provided,* that the Liquidation Trust will not be liable to so indemnify any Indemnified Party for any losses, claims, damages, liabilities or expenses, including reasonable attorneys' fees, disbursements and related expenses, due to any action or omission or breach of contract by such Indemnified Party constituting bad faith, fraud, willful misconduct or gross negligence; *provided further* that (except as provided in the preceding proviso) nothing in this Article 8.7 will be deemed to restrict the Liquidation Trustee's right to receive an indemnity based on any act or omission taken in accordance with the provisions of this Agreement. Notwithstanding anything to the contrary in this Agreement, the Indemnified Parties will be entitled to obtain advances from the Liquidation Trust Expenses Account to cover their expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of the Liquidation Trustee in its capacity as such.   Without limiting the generality or effect of the foregoing, within five Business Days after written request by an Indemnified Party (including the Liquidation Trustee) to the Liquidation Trustee and the Steering Committee, the Liquidation Trustee will, in accordance with such request (but without duplication), from the Liquidation Trust Expenses Account (taking into account transfers of cash thereto as contemplated in Article 3.2(c)) (a) pay such expenses on behalf of the Indemnified Party, (b) advance to the Indemnified Party cash in an amount sufficient to pay such expenses, or (c) reimburse the Indemnified Party for such expenses, *provided,* that the Indemnified Party provides an undertaking to repay the amount so paid, advanced or reimbursed to the Liquidation Trust Expenses Account upon the entry of a Final Order finding that such Indemnified Party was not entitled to indemnity under the provisions of this Article 8.7.

## ARTICLE 9
## SELECTION, REMOVAL AND COMPENSATION OF
## THE LIQUIDATION TRUSTEE

9.1     Initial Liquidation Trustee.

The initial Liquidation Trustee will be _____.

9.2     Term of Service.

The Liquidation Trustee will serve until (a) termination of the Liquidation Trust in accordance with this Agreement or (b) the Liquidation Trustee's resignation or removal.

9.3     Removal of the Liquidation Trustee.

**EXHIBIT 1.1.43 TO PLAN**

Any Person serving as the Liquidation Trustee may be removed at any time by a Final Order of the Bankruptcy Court. The removal will be effective on the date specified in such Final Order.

9.4 <u>Resignation of the Liquidation Trustee.</u>

The Liquidation Trustee may resign at any time by giving the Bankruptcy Court and the Steering Committee at least thirty (30) days' written notice of the Liquidation Trustee's intention to do so. In the event of a resignation, the resigning Liquidation Trustee (or the successor Liquidation Trustee) will render to the Bankruptcy Court a full and complete accounting of monies and assets received, disbursed and held during the term of office of the resigning Liquidation Trustee pursuant to this Agreement. The resignation will be effective on the latest of (a) the date specified in the notice; (b) the date that is thirty (30) days after the date the notice is delivered; (c) the date the accounting described in the preceding sentence is delivered; or (d) the date the successor Liquidation Trustee accepts its appointment as such. Notwithstanding the resignation of the Liquidation Trustee pursuant to this Article 9.4, the rights of the resigning Liquidation Trustee under Articles 8.2 and 8.3 with respect to acts or omissions occurring prior to the effectiveness of such resignation will continue for the benefit of such resigning Liquidation Trustee following the effectiveness of such resignation.

9.5 <u>Appointment of Successor Liquidation Trustee.</u>

Prior to the resignation or removal of the Liquidation Trustee, the resigning Liquidation Trustee will, in consultation with the Steering Committee, (a) identify a successor Liquidation Trustee to fill the vacancy and (b) request the Bankruptcy Court's approval of the identity and terms of engagement of such successor Liquidation Trustee. Except as otherwise ordered by the Bankruptcy Court, any successor Liquidation Trustee so appointed must consent to and accept in writing the terms of this Agreement and agree that the provisions of this Agreement are binding upon and inure to the benefit of the successor Liquidation Trustee and all of such successor Liquidation Trustee's heirs and legal and personal representatives, successors or assigns.

9.6 <u>Powers and Duties of Successor Liquidation Trustee.</u>

A successor Liquidation Trustee will have all the rights, powers, privileges and duties of its predecessor.

9.7 <u>Trust Continuance.</u>

The resignation or removal of the Liquidation Trustee will not terminate the Liquidation Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Liquidation Trustee.

9.8 <u>Compensation and Costs of Administration.</u>

The Liquidation Trustee will receive fair and reasonable compensation for its services, which will be a charge against and paid out of the Liquidation Trust Expenses Account. The Liquidation Trustee's fees are as set forth in the Engagement Letter. In addition, all reasonable costs, expenses and obligations incurred by the Liquidation Trustee in administering the

**EXHIBIT 1.1.43 TO PLAN**

Liquidation Trust, in carrying out its other responsibilities under this Agreement or in any manner connected, incidental or related thereto (including the cost of professionals that may, in accordance with this Agreement, be employed by the Liquidation Trustee) will, subject to the provisions of Article 4.5, be paid, at the direction of the Liquidation Trustee, from the Liquidation Trust Expenses Account. The terms of the Engagement Letter are incorporated herein by reference and for all purposes are deemed to be an integral part of this Agreement to the same extent as if restated in full herein.

## ARTICLE 10
## MAINTENANCE OF RECORDS; REPORTING

10.1   <u>Books and Records</u>.

The Liquidation Trustee will maintain books and records containing a description of all property from time to time constituting the Liquidation Trust Assets (which assets will be valued consistently for all federal income tax purposes) and an accounting of all receipts and disbursements. Such books and records will be open to inspection by any Beneficiary, the Steering Committee or the Bankruptcy Court at any reasonable time during normal business hours. The fiscal year of the Liquidation Trust will be the calendar year.

10.2   <u>Reports to be Filed with the Bankruptcy Court</u>.

(a)   Quarterly Reports. Within forty-five (45) days after the end of each of the first three calendar quarters of each calendar year, the Liquidation Trustee, on behalf of the Liquidation Trust, will file a Quarterly Receipts/Disbursements Report with the Bankruptcy Court and send a copy thereof to the Steering Committee.

(b)   Annual Reports. Within ninety (90) days after the end of each calendar year, the Liquidation Trustee, on behalf of the Liquidation Trust, will file an Annual Receipts/Disbursements Report with the Bankruptcy Court and send a copy thereof to the Steering Committee.

(c)   Current Reports. In the event of developments affecting the Liquidation Trust in any material respect (as determined by the Liquidation Trustee in its Permitted Discretion), the Liquidation Trustee, on behalf of the Liquidation Trust, will file promptly with the Bankruptcy Court a Current Report and send a copy thereof to the Steering Committee.

(d)   Reports Available on Request. The Liquidation Trustee will furnish or otherwise make available to any then-current Beneficiary, upon written request, a copy of: (i) the most recent Annual Receipts/Disbursements Report; (ii) any Quarterly Receipts/Disbursements Report for any period subsequent to the period covered by the most recent Annual Receipts/Disbursements Report (or, if no Annual Receipts/Disbursements Report has yet been filed, for any period subsequent to the Effective Date); or (iii) any Current Report filed subsequent to the period covered by the most recent Annual Receipts/Disbursements Report (or, if no Annual Receipts/Disbursements Report has yet been filed, subsequent to the Effective Date).

**EXHIBIT 1.1.43 TO PLAN**

10.3    Compliance with Federal Securities Laws.

The parties hereto do not anticipate that the Liquidation Trust will be required to comply with the registration and reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended. However, if following the Effective Date, the Liquidation Trustee determines, based on the advice of counsel, that the Liquidation Trust is required to comply with the registration and reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidation Trustee will take any and all actions to comply with such requirements.

10.4    Tax Returns and Payments.

(a)    General. The Liquidation Trustee will be responsible for filing all foreign, U.S. federal, state and local tax returns for the Liquidation Trust and the Debtor and for the timely preparation and distribution to the Beneficiaries of any necessary foreign, U.S. federal, state or local information returns. Notwithstanding anything to the contrary in this Agreement, the Liquidation Trustee will not be obligated to deliver any such information returns to Holders of Disputed Claims in their capacity as such.

(b)    Pending Payments. The Liquidation Trustee will timely file tax returns for the Trust Accounts as a grantor trust and/or a liquidating trust under Treasury Regulations Section 1.671-1(a) and/or Treasury Regulations Section 301.7701-4(d) and related regulations with respect to Pending Payments. Pursuant to such provisions, for federal income tax purposes the Liquidation Trustee will allocate to Beneficiaries entitled to receive Pending Payments, their pro rata shares of any income or loss of the Trust Accounts, and such Beneficiaries will be subject to tax on the Trust Accounts' taxable income on a current basis.

(c)    Trust Accounts Exclusive of Pending Payments. With respect to the Trust Accounts (excluding amounts constituting Pending Payments), the Liquidation Trustee will timely (i) file such income tax and other returns and statements as are required to comply with (x) the applicable provisions of the Internal Revenue Code and the Treasury Regulations promulgated thereunder, including the requirements set forth in Treasury Regulations Section 1.468B-9(c), and (y) any applicable state and local law and the regulations promulgated thereunder, and (ii) pay from the applicable Trust Account any taxes reported as owing on such returns and statements.

# ARTICLE 11
# DURATION OF THE LIQUIDATION TRUST

11.1    Duration.

The Liquidation Trust will become effective upon the Effective Date. Thereupon, the Liquidation Trust and its provisions herein will remain and continue in full force and effect until the Liquidation Trust is terminated as contemplated in this Article 11.

**EXHIBIT 1.1.43 TO PLAN**

11.2    Termination Upon Distribution of All Liquidation Trust Assets.

The Liquidation Trustee will liquidate (including objecting to Claims and determining the proper recipients and amounts of distributions to be made from the Liquidation Trust) and distribute the Liquidation Trust Assets to the Beneficiaries that are determined to hold Allowed Claims and Equity Interests and take such steps as are necessary, appropriate or desirable to close the Chapter 11 Case. Upon (a) the payment of all costs, expenses and obligations incurred in connection with administering the Liquidation Trust; (b) the distribution of all remaining Liquidation Trust Assets and/or proceeds therefrom in accordance with the provisions of the Plan, the Confirmation Order and this Agreement; (c) the closure of the Chapter 11 Case; and (d) the completion of any necessary or appropriate reports, tax returns or other documentation, the Liquidation Trust will terminate and the Liquidation Trustee will have no additional responsibility in connection therewith except as may be required to effectuate such termination under relevant law and except as described in Article 11.4.

11.3    Termination After Five Years.

If the Liquidation Trust has not been previously terminated pursuant to Article 11.2, on the fifth anniversary of the Effective Date, unless otherwise extended by the Bankruptcy Court due to the Liquidation Trust's necessity to complete its Claims resolution and liquidating purpose, and provided such extension does not adversely affect the status of the Liquidation Trust for federal income tax or federal securities law purposes, the Liquidation Trustee will distribute all of the Liquidation Trust Assets to the Beneficiaries in accordance with the Plan and this Agreement. Immediately after (a) the payment of all costs, expenses and obligations incurred in connection with administering the Liquidation Trust; (b) the distribution of all remaining Liquidation Trust Assets and/or proceeds therefrom in accordance with the provisions of the Plan, the Confirmation Order and this Agreement; (c) the closure of the Chapter 11 Case; and (d) the completion of any reports, tax returns or other documentation determined by the Liquidation Trustee, in its Permitted Discretion, to be necessary, appropriate or desirable, the Liquidation Trust will terminate and the Liquidation Trustee will have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law and except as described in Article 11.4. The Liquidation Trustee will have the right to apply to the Bankruptcy Court to extend the term of the Liquidation Trust as contemplated above if the Liquidation Trustee determines, in its Permitted Discretion, that such extension is necessary to enable the Liquidation Trust to complete its resolution and liquidating purpose.

11.4    Other Termination Procedures.

The Liquidation Trustee will at all times endeavor to liquidate expeditiously the Liquidation Trust Assets, and in no event will the Liquidation Trustee unduly prolong the duration of the Liquidation Trust. The Liquidation Trustee will have the power to exercise all the powers, authorities and discretion herein conferred solely for the purpose of liquidating and winding up the affairs of the Liquidation Trust. For a period of five (5) years after the distribution of all of the Liquidation Trust Assets, the Liquidation Trustee will retain the books, records and files that have been delivered to or created by the Liquidation Trustee, at which time the Liquidation Trustee may dispose of such books, records and files in any manner that the Liquidation Trustee deems appropriate.

**EXHIBIT 1.1.43 TO PLAN**

11.5    No Reversions.

Notwithstanding anything to the contrary in the Plan or this Agreement, in no event will any of the Liquidation Trust Assets revert to the Debtor upon termination of the Liquidation Trust.

## ARTICLE 12
## MISCELLANEOUS

12.1    Limitation on Transferability.

(a)    No Transfer of Rights to Distributions. Except as otherwise expressly provided in the Plan, it is understood and agreed that the right to distributions from the Liquidation Trust will be non-transferable during the term of this Agreement, except with respect to a transfer by will or under the laws of descent and distribution. Such transfers will not be effective until appropriate written notification and proof thereof is submitted to the Liquidation Trustee, and the Liquidation Trustee may continue to pay all amounts to or for the benefit of the Beneficiaries until receipt of proper written notification and proof of any such transfer. The Liquidation Trustee may rely upon such written proof without the requirement of any further investigation.

(b)    Notwithstanding the provisions of paragraph (a) above, the right of Holders of Class 6 Interests who are Beneficiaries shall be freely transferrable by transfer of the certificate or certificates representing such Class 6 Interests, duly endorsed or accompanied by duly executed stock powers

(c)    No Assignment. Neither the Debtor nor the Liquidation Trustee may assign this Agreement without the prior written consent of the other.

12.2    Notices.

All notices to be given to Beneficiaries may be given by regular mail, electronic transmission or delivered personally, at the addresses appearing on the books kept by the Liquidation Trustee. Any notice or other communication which may be or is required to be given, served or sent to the Debtor, the Liquidation Trustee, or the Steering Committee will be in writing and will be sent by registered or certified mail, return receipt requested (postage prepaid), transmitted electronically, sent by hand delivery or sent by facsimile (if receipt is confirmed), addressed as follows:

**If to the Debtor:**

LANDIS RATH & COBB LLP
919 Market Street, Suite 1800
Wilmington, DE 19801
Attention:  Adam G. Landis and Matthew B. McGuire

- and –

EXHIBIT 1.1.43 TO PLAN

SMITH, GAMBRELL & RUSSELL, LLP
Suite 3100, Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Attention: Ronald E. Barab and Brian P. Hall

**If to the Liquidation Trustee:**


With Copies to:

**If to the Steering Committee:**

With Copies to:

or to such other address as may from time to time be provided in a written notice to each party.

12.3    No Bond.

Notwithstanding any state law to the contrary, the Liquidation Trustee (including any successor) and the Disbursing Agent will be exempt from giving any bond or other security in any jurisdiction.

12.4    Governing Law; Submission to Jurisdiction; Service of Process.

This Agreement will be construed in accordance with and governed by the internal substantive law of the State of Delaware regardless of the laws that might otherwise govern under principles of conflict of laws applicable thereto. The Bankruptcy Court will have exclusive jurisdiction over any dispute arising out of or in connection with the transactions contemplated by this Agreement. The parties to this Agreement consent to the exclusive jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts therefrom) in any such dispute and irrevocably waive, to the fullest extent permitted by law, any objection that they may now or hereafter have to the laying of the venue of any such dispute in the Bankruptcy Court or that any such dispute brought in the Bankruptcy Court has been brought in an inconvenient forum. This Agreement is subject to any order or act of the Bankruptcy Court applicable hereto. Process may be served on any party anywhere in the world, whether within or without the jurisdiction of any court to which the parties have submitted herein. Without limiting the foregoing, each party to this Agreement agrees that service of process on that party may be made upon the designated Person at the address provided in Article 12.2 and will be deemed to be effective service of process on that party.

12.5    Successors and Assigns.

This Agreement will inure to the benefit of and will be binding upon the parties hereto and their respective successors and permitted assigns.

**EXHIBIT 1.1.43 TO PLAN**

12.6     No Execution.

All funds in the Liquidation Trust will be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Liquidation Trust Assets or the Liquidation Trust in any manner or compel payment from the Liquidation Trust except by order of the Bankruptcy Court. Payment will be solely governed by the Plan and this Agreement.

12.7     Amendment.

This Agreement may be amended only by order of the Bankruptcy Court.

12.8     Severability.

If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement will remain in full force and effect and will in no way be affected, impaired or invalidated.

**EXHIBIT 1.1.43 TO PLAN**

IN WITNESS WHEREOF, the parties have executed this Agreement (or are deemed to have so executed this Agreement) as of the day and year first written above.

DEBTOR:

SKYBUS AIRLINES, INC.

By:_____
Name:
Title:

LIQUIDATION TRUSTEE:

By:_____
Name:
Title: